**Gregory E. SOHNS, Plaintiff,**

v.

**Willy DAHL et al., Defendants.**

**Civ. A. No. 74–C–32–C.**

United States District Court, W. D. Virginia, Charlottesville Division.

Feb. 11, 1975.

---

1210

Francis L. Buck, Paxson, Smith, Boyd, Gilliam & Gouldman, Charlottesville, Va., for plaintiff.

Maurice M. Diliberto, Miami, Fla., Edward R. Slaughter, Jr., McGuire, Woods & Battle, Charlottesville, Va., for defendants.

## MEMORANDUM OPINION

DALTON, District Judge.

This case comes before this court on defendants' motions to dismiss.

This is a multi-defendant action that centers around transactions involving the securities of two Bahamian corporations, International Inter-Ocean Transport, Ltd. (Transport) and Skipdahl, Ltd. (Skipdahl) and is based on an amended complaint containing three counts.

The first count avers that plaintiff purchased from Defendant Dahl securities in Transport and Skipdahl and that his purchases were induced by false and misleading material representations and omissions by Defendants Dahl and Diliberto in violation of section 10(b)[1] of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), (1934 Act) and Rule 10b–5[2], 17 C.F.R. § 240.10b–5, promulgated thereunder by the Securities and Exchange Commission.

The second count avers the same purchases by the plaintiff and a violation by the defendants of section 17(a)[3] of the Securities Act of 1933, 15 U.S.C. § 77q(a) (1933 Act).

The third count avers the same purchases and defendants' violation of sec-

---

1. Section 10(b) provides:
 *Manipulative and deceptive devices*
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange.
 (a) . . .
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

2. Rule 10b–5 provides:
 Employment of manipulative and deceptive devices.
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or by the mails or of any facility of any national securities exchange,
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
 in connection with the purchase or sale of any security.

3. Section 17(a) provides:
 Fraudulent interstate transactions
 (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
 (1) to employ any device, scheme, or artifice to defraud, or
 (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

tion 12 [4] of the 1933 Act, 15 U.S.C. § 77*l*.[5]

The fourth count avers the same purchases by plaintiff and a claim based on common law fraud and deceit.

With respect to count I, this court's jurisdiction is based on section 27[6] of the 1934 Act, '15 U.S.C. § 78aa. With respect to counts II and III, jurisdiction is based on section 22(a) of the 1933 Act, 15 U.S.C. § 77v(a). Plaintiff asserts this court's jurisdiction over count IV on the theory of pendent jurisdiction.

Defendant Dahl, the seller of the securities, is alleged to be an officer, director and "control person" in both corporations.

Defendant Diliberto is alleged to be the secretary of Transport, a director of Skipdahl, a "control person" in and attorney for both corporations, and an attorney for Mr. Dahl. Plaintiff alleges that Mr. Diliberto actively participated in the negotiation and sale of these securities and was a "principal, aider and abettor and 'co-conspirator' in the fraudulent scheme."

Plaintiff has sued the defendant law firm of Barrett, Diliberto and Estrumsa "as counsel for the corporation . . .", for the acts of its members and/or partner, defendant Diliberto, as well as for its own actions as participant, principal, aider and abettor and co-conspirator in the fraudulent sale of securities."

Defendants have raised several preliminary objections by motion:

Messrs. Diliberto and Dahl have moved to dismiss for improper venue and failure to state a claim and to transfer this case to the Southern District of Florida. In addition, Mr. Diliberto has moved to dismiss for lack of *in personam* jurisdiction and to strike plaintiff's claim for punitive damages. He has further objected to plaintiff's filing of

---

4. Section 12 provides:

Civil liabilities arising in connection with prospectuses and communications.

Any person who—

(1) offers or sells a security in violation of section 77e of this title, or

(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

5. Plaintiff's complaint erroneously cites section 12 as § 77e.

6. Section 27 provides:

Jurisdiction of offenses and suits

The district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts busienss, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 225 and 347 of Title 28. No costs shall be assessed for or against the Commission in any proceeding under this chapter brought by or against it in the Supreme Court or such other courts.

his amended complaint without obtaining leave of court.

The law firm of Barrett, Diliberto and Estrumsa has moved to dismiss it as an improper party defendant.

## I

### *Improper Venue*

Both Messrs. Dahl[7] and Diliberto have filed a motion to dismiss for improper venue. In support of their motion, Mr. Diliberto has submitted several affidavits which compositively affirm the following conclusions:

(1) That he is neither an inhabitant nor a resident of Virginia and the Western District of Virginia in particular.

(2) That he has not conducted nor transacted any business nor participated in any offer or sale or transactions in the Western District and that no act or transaction occurred in the Western District.

Particularizing the above conclusory statements, Mr. Diliberto states:

"Your affiant conducted no business in the Western District of Virginia. Further, your affiant had no contact, exposure, phone calls initiated by the affiant, correspondence or any act of any nature with Plaintiff . . . prior to January 29, 1972.

. . . The [first] meeting at which affiant first met Mr. Sohns took place in affiant's office in Miami, Florida [on January 29, 1972] when Plaintiff executed an agreement between Sohns and Dahl. . . .

. . . Prior to and after that act, all actions by affiant were done as (a) attorney for Dahl, or (b) attorney for Skipdahl, Ltd., a Bahamian Corporation.[8] . . . there has been no affirmative allegation on the part of the Plaintiff that any activities of the Defendant occurred in the Western District of Virginia."

Mr. Dahl has submitted no affidavits in support of his motion to change venue.

■ Paragraphs 10 and 11 of plaintiff's amended complaint particularize events that support his choice of venue in this district. Paragraph 10 states:

Throughout the period of transactions, defendant Dahl corresponded through the mails with plaintiff in both McLean, Virginia and in Charlottesville, Virginia, making false representations designed to perpetuate the fraudulent misstatements that the vessel "Sea Explorer II" would be placed in operation in the Bahamas.

Paragraph 11 states:

"'In early October, 1973, in response to plaintiff's requests for repurchase of

---

7. There is a real question as to whether Mr. Dahl has waived any objection to venue by failing to include it in his first 12(b) motion to dismiss. *See* Fed.R.Civ.P. 12(g). Plaintiff filed his original complaint on July 29, 1974; Mr. Dahl filed a motion to dismiss for failure to state a claim under 12(b)(6) on September 11, 1974. Plaintiff filed an amended complaint on October 15, 1974. On November 18, 1974, a motion to dismiss for improper venue was filed on behalf of both Messrs. Dahl and Diliberto. Since the alleged defect of improper venue was not created by the new matter raised in plaintiff's amended complaint, Mr. Dahl's waiver of this objection prior to the amendment would probably remain with respect to plaintiff's amended complaint. *See* Wright & Miller, Federal Practice and Procedure: Civil § 1347. Nevertheless, since Mr. Diliberto has timely filed his objection, this court has considered venue with respect to both. Moreover,

even if Mr. Dahl has waived his objection to proper venue, he may still move for a transfer under § 1404(a).

8. That Mr. Diliberto may have in fact been acting as an attorney for Mr. Dahl and Skipdahl, Ltd. is immaterial to whether he violated the securities laws. A license to practice law would not clothe an individual with armor against his direct misrepresentations to a purchaser or seller. *See* SEC v. Frank, 388 F.2d 486 (2nd Cir. 1968). The case of a defendant charged with affirmative misrepresentation who happens also to be an attorney presents none of the difficulties of and should not be confused with the situation of an attorney who, aware of misrepresentation through confidences by his client, is sued in his representative capacity for failure to make disclosure. *See* SEC v. National Student Marketing Corp., 360 F.Supp. 284, 292 (D.D.C.1973).

his securities, defendant Dahl repurchased 500 shares of Skipdahl, Ltd. from the plaintiff in Charlottesville, Virginia, for $6,000.00 for the purpose of quieting plaintiff's demands for assistance in advertising his shares, thereby delaying discovery of the misrepresentations and omissions alleged . . . Defendant Maurice M. Diliberto participated in the negotiations preceding the repurchase and handled the closing of the transaction by letters and telegrams. This repurchase coupled with the continuing representations concerning the vessel 'Sea Explorer II', the nature of the plaintiff's interest in Skipdahl, Ltd. and its exemption from the Securities Act, and the dilatory excuses alleged in paragraph 10 constituted a manipulative and deceptive device and/or contrivance which perpetuated and furthered a scheme to obscure the fraudulent representations in connection with the original sale of the securities involved."

Plaintiff has repeated the substance of these allegations in his affidavits submitted in opposition to defendants' motion to dismiss for proper venue and further affirms that during the fall and winter of 1973, while living in Charlottesville, Va., the plaintiff received a telephone call from Mr. Diliberto and cablegrams from both defendants in connection with the repurchase of half his interest in Skipdahl, Ltd. This repurchase and the negotiations preceding it occurred in Charlottesville; Mr. Diliberto participated in these negotiations and handled its closing by telephone, letters and telegrams to Charlottesville. Summarizing his allegations, plaintiff maintains the existence of a scheme "employed by the defendants from December of 1971 through February of 1974 whereby the defendants . . . solicited offers from the plaintiff to buy shares in the corporations controlled by . . . Dahl and Diliberto; . . . and in furtherance of the existing scheme and to avoid detection of their previously fraudulent practices, the defendants maintained the fraudulent scheme through February of 1974." Plaintiff affirms that all communications received from the defendants while he resided in Charlottesville, including Mr. Dahl's repurchase of stock, continued the alleged scheme of misrepresentation. Affidavits of Gregory Sohns, plaintiff.

Based on the above allegations and affidavits, this court rules that the plaintiff has sufficiently shown that venue properly lies in this district.

In determining whether venue is proper in this district, this court is guided at the threshold by certain settled points of law.

■ Since venue properly laid for claims arising under either the 1933 or 1934 Act satisfactorily establishes venue for those claims arising under the other, SEC v. National Student Marketing, *supra* note 6a, 360 F.Supp. at 291; Zorn v. Anderson, 263 F.Supp. 745 (S.D.N.Y. 1966); and venue for state law claims may lie where the federal claims properly lie under the doctrine of pendent jurisdiction, United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); this court need consider only whether venue is proper in this district under the broader venue provision of the 1934 Act.

■■ Secondly, although venue is a notion personal to each defendant, this court's jurisdiction over this action does not depend on whether each defendant performed an "act or transaction" in this forum district. In a multi-defendant and multi-forum securities action where plaintiff alleges a common scheme of acts and transactions to violate the securities laws, venue once established for any of the defendants in the forum, establishes venue for all defendants wherever found; this is so even in the absence of any acts by a particular defendant within that district. SEC v. National Student Marketing Corp., *supra* note 6a, 360 F.Supp. at 289–90 and

cases cited therein. Since plaintiff has alleged defendants' joint participation in a common scheme, this court has considered the alleged acts of all defendants in reaching its decision.

Thirdly, and most importantly, section 27 of the 1934 Act, 15 U.S.C. § 78aa, prescribes special venue rules for actions instituted under the Act. That section provides that venue is proper in the district wherein any act or transaction constituting the violation occurs, the defendant is found, or the defendant transacts business.[9] Plaintiff apparently concedes that the defendants neither are "found" nor "transact business" in this district, as those terms are used in section 27, and asserts venue only on the basis of "acts" or "transactions" occurring in this district.

■ For a defendant's contacts with a particular forum to be sufficient to establish venue under section 27, courts have required not that the alleged acts within the forum district constitute the core of the claim, but only that there exists but one act within the district which represents more than an immaterial part of the alleged violations. Jacobs v. Tenney, 316 F.Supp. 151, 158 (D.Del.1970); Puma v. Marriott, 294 F.Supp. 1116, 1120 (D.Del.1969). Conceptually, courts have thought satisfied the requirement of section 27 that venue-supporting acts be acts "constituting the violation" if the acts or transactions committed in the forum are material to and in furtherance of the allegedly fraudulent scheme. Dauphin Corp. v. Redwall Corp., 201 F.Supp. 466, 469–70

(D.Del.1962); SEC v. National Student Marketing, supra 360 F.Supp. at 292. Given the legislative purpose of the securities laws to provide adequate relief to defrauded investors, courts have not hesitated to give section 27 a broad swath and have sustained plaintiff's choice of venue even though based on only one act or acts peripheral to the alleged violations. Clapp v. Stearns & Co., 229 F.Supp. 305 (S.D.N.Y.1964) (single telephone call from New York to Boston); Jacobs v. Tenney, supra (annual stockholders' meeting and election of directors and officers, which allegedly put the defendant in control of corporation in anticipation of corporation's program of financing, property acquisition and other wrongs); Puma v. Marriott, supra (mailing of allegedly false proxy statements in forum district); Dauphin v. Redwall, supra (filing of defendant's charter and the amendment of plaintiff's charter in connection with an allegedly fraudulent scheme); Wharton v. Roth, 263 F.Supp. 922 (E.D.N.Y.1964) (no answer that defendants' participation consisted of acts and transactions outside of territorial jurisdiction of court); Texas Gulf Sulphur v. Ritter, 371 F.2d 145, 149 (10th Cir. 1967) (allegedly false press release transmitted into district in Wall Street Journal); Schneider v. Sears, 265 F.Supp. 257, 261–62 (S.D.N.Y.1967) ("The transmission or receipt of any interstate communication in the forum district supports venue.")

■ In his amended complaint, plaintiff has particularized the acts and omissions relied on as violations of the securities laws.[10] It is the opinion of this

9. See note 6 supra.

10. Paragraph 6 of plaintiff's amended complaint alleges the following:
6. Through the course of the negotiations and transactions, the defendants Dahl and Diliberto led plaintiff to believe that he was investing in a shipping business that would commence shipping operations within one year of his investment and that his shares were freely transferable to the public.
(a) To this end the defendants made the following false representations to the plaintiff that:

(i) That defendant Dahl was the true and rightful owner of a seagoing vessel, the "Sea Explorer II", which was seaworthy and would be placed in operation in the Bahamian shipping trade within the year, title to which would be transferred to Skipdahl, Ltd; and

(ii) That the projected income for the shipping trade was $27,873.00 net per month; and

(iii) That "Sea Explorer II" was in fact suited for such ocean shipping ventures; and that

court that the acts and transactions that plaintiff has alleged to have occurred in the Western District have a substantial relation to those alleged violations. Plaintiff's allegations depict a scheme designed to misrepresent the prospects of the corporations in which he invested as well as the nature of his investment. He alleges certain acts and omissions which he contends fraudulently induced him to buy from and sell securities to the defendants. Some of these acts occurred in Charlottesville. For example, that a sale of securities was negotiated between the parties while the plaintiff resided in Charlottesville and the closing of that transaction in fact occurred in Charlottesville is uncontradicted. Though other acts support venue in this district, this series of acts is enough to establish venue in the Western District of Virginia.

## II

### Forum Non Conveniens and § 1404(a) Transfer

 Defendants have moved to transfer this case to the Southern District of Florida under the doctrine of *forum non conveniens* [11] and presumably 28 U.S.C. § 1404(a). In support of their motion, Mr. Diliberto has affirmed that his residence and offices are in Miami, Florida, that the corporate books, records and transfer agents and other Bahamian officials reside in Nassau, Bahamas, that Mr. Dahl is a citizen and currently a resident of Denmark and when in this country resides in the Miami vicinity, and that all defendants and potential witnesses reside or do business in the State of Florida or in the Bahama Islands. Plaintiff opposes the motion,

(iv) Such ocean shipping would be engaged in among various islands within the Bahamas; and

(v) The plaintiff had purchased a limited partnership interest in the ventures and was therefore a limited partner;

(vi) The securities could be freely resold to the public through the advertising media; and

(vii) That the securities sold to the plaintiff were exempt from registration under the Securities Act of 1933.

(b) To this end, the defendants omitted to inform the plaintiff that:

(i) The securities were not registered in accordance with the provisions of the Securities Act of 1933, 48 Stat. 74, U.S.C. Title 15, Section 77a et seq; and

(ii) The public offering and subsequent sale of the securities had been violations of Section 5 of the Securities Act of 1933, 48 Stat. 77, U.S.C. Title 15, Section 77a.

In paragraph 8, plaintiff alleges the following:

8. The material representations and omissions therefrom alleged in paragraph 6 were false, misleading and material in that:

(i) The vessel "Sea Explorer II" was not at any time placed into service in the Bahama shipping trade, nor has said vessel, nor

any other vessel, ever been brought to the Bahamas by the defendants or engaged in any trade, since the purchase by the plaintiff of said securities.

(ii) The plaintiff became a stockholder in the Bahamian corporation and at no time a limited partner in the ventures;

(iii) The securities in International Inter-Ocean Transport Ltd. could not be freely resold to the public through the advertising media;

(iv) The securities were not registered under the terms of the Securities Act of 1933, 48 Stat. 74, U.S.C. Title 15, Section 77a et seq;

(v) The sale of the securities to the plaintiff was a violation of Section 5 of the Securities Act of 1933, 47 Stat. 77, U.S.C. Title 15, Section 77e; and

(vi) Defendants knew or reasonably should have known that these representations were false and materially misleading.

11. The doctrine of *forum non conveniens*, though subscribed to by the federal courts, properly permits only dismissal and not transfer. Transfer to a more convenient forum is authorized only pursuant to the statutory authority contained in § 1404(a). See Wright, Federal Courts (2nd Ed. 1970) § 44, pp. 164–65.

affirming that he is presently a law student residing in Charlottesville, Virginia.

Section 1404(a) provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." [12]

This provision gives a federal court broad discretion on "an individualized case-by-case consideration of convenience and fairness", Van Dusen v. Barrack, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); and allows a transfer instead of the sometimes harsh remedy of dismissal. Although § 1404(a) gives the district court a broader discretion than the traditional doctrine of *forum non conveniens*, the same factors are to be considered. Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955); Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); SEC v. Harwyn Publishing Corp., 232 F.Supp. 274, 277 (S.D.N.Y.1964); Wyndham Associates v. Bintliff, 398 F.2d 614, 620–621 (2nd Cir. 1968), cert. denied, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438.

■■ In ruling on a motion under § 1404(a) a court will accord substantial weight to plaintiff's choice of forum. SEC v. Harwyn Publishing Corp., *supra* 232 F.Supp. at 277 (plaintiff's choice of forum should not be disturbed unless "the balance of convenience and justice has been shown to weigh heavily in favor of defendant," especially when some conduct complained of occurred in the forum district); Golconda Mining Corp. v. Herlands, 365 F.2d 856, 857 (2nd Cir. 1966); and the burden rests with the defendants to demonstrate that, on balance, the interests of justice and convenience weigh heavily in favor of the transfer and against the value that attaches to plaintiff's choice of forum. *See* SEC v. National Student Marketing,

*supra* 232 F.Supp. at 294. Inconvenience to the movants alone will not suffice and any hardship incurred by the defendants must be balanced against the hardships that the transfer would cause the plaintiff. Moreover, courts have usually required documentation that another forum is more convenient. They have refused to transfer on the basis of conclusory affidavits that trial where suit was brought would cause great expense and require importation of witnesses, demanding that the moving parties show what helpful testimony the distant witnesses would provide. *See* Wright, Federal Courts, § 44, p. 169 and cases cited therein.

■ Guided by the above principles, this court denies defendants' motion to transfer this case to the Southern District of Florida. Only Mr. Diliberto is presently residing in that district. Moreover, in addition to defndants' failure to specify which witnesses might be subpoenaed and the inconvenience they would experience by trial in this district, it would appear that most of the potential witnesses as well as corporate documents are not within the Southern District of Florida, but are in the Bahamas and possibly Denmark. The increased convenience afforded by transporting these documents and persons to the Southern District of Florida instead of the Western District of Virginia appears relatively slight and does not outweigh the hardships plaintiff would experience by a change of venue. The interests of justice and fairness cannot recommend such a transfer; defendants' motion is denied.

III

*Improper Service*

Defendants have also filed a motion to quash service of process because of lack of *in personam* jurisdiction, presumably under Fed.R.Civ.P. 12(b)(2).

12. There is no doubt that this action could have been brought in the Southern District of Florida.

**1218**

Section 27 of the 1934 Act, in addition to prescribing proper venue, provides that "process . . . may be served in any . . . district of which the defendant is an inhabitant or wherever the defendant may be found." Since venue properly lies in this district, this court has *in personam* jurisdiction over the defendants with the power to serve them properly outside the forum. Because plaintiff states a claim under the 1934 Act, the special process provisions of that Act apply as well to claims arising under the 1933 Act. Puma v. Marriott, *supra* 294 F.Supp. at 1121; Dauphin Corp. v. Redwall Corp., *supra* 201 F.Supp. at 469; Zorn v. Anderson, 263 F.Supp. 745, 747 (S.D.N.Y.1966); Thiele v. Shields, 131 F.Supp. 416, 420 (S.D.N.Y.1955).

Whether the special process provision of the 1934 Act also extends this court's *in personam* jurisdiction to state law claims is a more debatable issue. Although it is clear that this court has the power to consider the subject matter of common law claims that arise out of the same nucleus of operative facts as federal claims, United Mine Workers v. Gibbs, *supra*; courts have divided over whether extraterritorial service, which establishes personal jurisdiction over federal claims, is effective to confer personal jurisdiction over non-federal pendent claims. This court subscribes to the view that our jurisdiction does so extend. It is the opinion of this court that judicial economy and convenience of the parties is best facilitated by a consideration of all legal theories arising from a single set of operative facts such as those presented in this case. Once that set of facts and defendants are legitimately before this court because of the extraterritorial process provision of section 27, little would be

gained by not requiring a defendant to defend against a certain type of theory superimposed upon those facts. *See* Robinson v. Penn Central Co., 484 F.2d 553 (2nd Cir. 1973); Schwartz v. Eaton, 264 F.2d 195 (2nd Cir. 1959); Kane v. Central American Mining & Oil, Inc., 235 F.Supp. 559, 567–68 (S.D.N.Y. 1964); Puma v. Marriott, *supra* 294 F. Supp. at 1121.[13]

## IV

### *Failure to State a Claim*

Mr. Dahl initially filed a motion to dismiss for failure to state a claim in response to plaintiff's original complaint. In a subsequent memorandum of law in support of his motion, Mr. Dahl states in conclusory fashion that "the provisions of U.S.C.A. § 78j(b), Rule 10(b)-5 and § 77q(a) do not apply to the alleged activities of Willy Dahl individually. Further, count III of plaintiff's [original] complaint merely realleges its allegations enumerated in counts I and II and consequently also does not apply to Willy Dahl individually." In a motion to dismiss plaintiff's amended complaint, filed on behalf of both defendants, they state: "The alleged transaction between plaintiff and Defendant Willy Dahl is exempt from registration under U.S.C. Title 15, Section 77(d)." Although their precise contention is less than clear, defendants apparently assert that since the securities were exempt from registration under the 1933 Act, the fraud provisions of the 1933 and 1934 Acts do not apply as a matter of law. Although this claim should properly be raised as an affirmative defense in a responsive pleading, rather than on a 12(b) motion to dismiss, because this contention is clearly without merit, this court will consider it as a preliminary matter.

---

13. While the court was preparing its opinion on the issues discussed in Parts I–III, it received from Mr. Diliberto additional memoranda and affidavits in support of his motions to dismiss. Although the filing of these papers was untimely—January 20, 1975 being the agreed upon deadline—the court has nevertheless considered them but finds nothing in them to alter its judgments.

The exemption of section 4 of the 1933 Act, 15 U.S.C. § 77d, applies by its terms only to the prescriptions of section 5, 15 U.S.C. § 77e, not to the entire corpus of securities legislation. Moreover, that Mr. Dahl's alleged activities are within the purview of the fraud provisions is clear from an examination of those sanctions.

Section 10(b)[14] by its terms applies to "any person" and to "any security registered [i. e., listed] on a national securities exchange or any security not so registered."[15] Secondly, although the argument has been advanced that the section and rule do not apply to the purchase or sale of securities not traded in any organized market, the courts have uniformly rejected it.[16] It is therefore clear that, even assuming *arguendo* that Mr. Dahl could sustain his burden of proving that his securities fall within a statutory exemption from registration, any sale of those securities is nonetheless subject to the fraud provisions of the 1933 and 1934 Acts.[17] Likewise, Mr. Dahl's assertion that the sold securities were exempt from registration would in no event constitute a legal bar to the allegations of common law fraud and deceit.

## IV

*Plaintiff's failure to obtain leave of court before amending his complaint*

Defendants have objected to plaintiff's filing of an amended complaint without obtaining leave of court and presumably wishes to have the amended complaint dismissed on that basis. The objection is clearly without merit.

Fed.R.Civ.P. 15 provides that ". . . a party may amend his pleading once as a matter of course at any time before a responsive pleading is served . . .". Defendants did not file an answer to plaintiff's original complaint, but rather filed motions to dismiss. Such pre-answer 12(b) motions are not responsive pleadings. See language of Fed.R.Civ.P. 7(a); Wright & Miller, Federal Practice and Procedure: Civil § 1483. Plaintiff was therefore not required to obtain leave of court before filing his amended complaint.

## V

*Punitive Damages*

Defendants have moved to strike plaintiff's demand for punitive damages. The court reserves judgment on this issue until it can be more fully briefed.

---

14. It is settled that a private right of action is available for a violation of this section and rule 10(b)–5. Fratt v. Robinson, 203 F.2d 627 (9th Cir. 1953); Supt. of Insurance v. Bankers Life and Casualty Co., 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). It is further the majority position that the private right of action accrues to defrauded buyers as well as sellers. See, e. g. Jordan Building Corp. v. Doyle, O'Connor & Co., 401 F.2d 47 (7th Cir. 1958); Stevens v. Vowell, 343 F.2d 374 (10th Cir. 1965); McClure v. Bome Chemical Co., 292 F.2d 824 (3rd Cir. 1961); Hooper v. Mountain States Securities Corp., 282 F.2d 195 (5th Cir. 1960); Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2nd Cir. 1951); contra: Montague v. Electronic Corp. of America, 76 F.Supp. 933 (S.D.N.Y.1948).

15. Likewise, Rule 10(b)–5 applies to "any person" and to "any security". 17 C.F.R. § 240.10b–5.

16. *See, e. g.,* Supt. of Insurance v. Bankers Life & Casualty Co., *supra* 404 U.S. at 10, 11, 92 S.Ct. 165, 30 L.Ed.2d 128 (transactions conducted face to face as well as through a securities exchange or on an organized over-the-counter are within the coverage of § 10(b)).

17. § 17(a) of the 1933 Act likewise applies to "any person" and "any security"; however, although a private right of action has also been recognized under § 17(a) of the 1933 Act, *see* 3 Loss, Securities Regulation, 1784–1789 (2nd Ed. 1961); Goldstein v. Grayson, CCH Fed.Sec.Law Rptr. ¶¶ 92, 646 (S.D.N.Y.1970); Contra: Dyer v. Eastern Trust & Banking Co., 336 F.Supp. 890 (D.Me.1971); plaintiff's 10b–5 claim totally subsumes his 17(a) claim.

## VI

*Motion to Dismiss the law firm of Barrett, Diliberto & Estrumsa as a party defendant.*

The law firm of Barrett, Diliberto and Estrumsa, joined as a party defendant, has filed a motion to dismiss it as an improper party. The legal status of as well as plaintiff's claim against the law firm is unclear from the pleadings and the court reserves judgment on this motion at this time.

The defendants are directed to file their answers to plaintiff's amended complaint within fifteen (15) days from the date of this decision.

The parties are advised that a pretrial conference shall take place in this case on February 14, 1975 at 10:30 a. m. in the United States District Court, Old Post Office Building, Market Street, Charlottesville, Virginia.