C. J. WARREN, C. J. Warren Company, a New Mexico Partnership, and Victor Salazar, Plaintiffs,

v.

BOKUM RESOURCES CORPORATION, Richard D. Bokum, II, William E. Biava, William A. Buchecker, and I. Howard Wardlaw, Individually and as directors and officers of Bokum Resources Corporation, Peter F. F. Kissel, Louis Starr, and Louis H. Diamond, Individually and as directors of Bokum Resources Corporation, Beverly D. Roy, Individually and as an officer of Bokum Resources Corporation, Marjorie S. Deane and Riley Gilley, Individually and as trustees of a trust for the benefit of the children of Marjorie and Disque Deane, and Llennoco Corporation, Defendants.

Civ. No. 76–664.

United States District Court, D. New Mexico.

July 25, 1977.

Howard F. Houk, Albuquerque, N. M., Hobbs & Waldbaum, P. C., Larry F. Hobbs, Leonard N. Waldbaum and Douglas B. Koff, Denver, Colo., for plaintiffs.

Marchiondo & Berry, P. A., Zenon F. Myszkowski, Albuquerque, N. M., for defendants.

Lawler, Kent & Eisenberg, Philip N. Smith, Jr., Washington, D. C., and Adams & Foley, Quincy D. Adams, Albuquerque, N. M., for Louis H. Diamond, individually, and as Director of Bokum Resources Corp.

Rodey, Dickason, Sloan, Akin & Robb, P.A., John P. Burton, Albuquerque, N. M., for Llennoco Corp.

## MEMORANDUM OPINION

BRATTON, District Judge.

This matter coming on for consideration before the Court upon the Motions of defendants Llennoco Corporation and Bokum Resources Corporation, et al., to dismiss, and the Court having considered the memoranda together with the pleadings, affidavits and the entire file in this cause, it is concluded that the Motions are not well taken and will be denied.

While Llennoco Corporation joins and incorporates by reference the Motion of the other defendants to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., the main thrust of its argument is that Llennoco Corporation does not have sufficient contacts with New Mexico to justify personal jurisdiction over this defendant on any claims via extraterritorial service of process, and for the same reasons, that venue is not properly laid in New Mexico.

The causes of action set out in the Complaint are based on acts of the defendants alleged to constitute violations of §§ 10(b) and 14(e) of the Securities Exchange Act of 1934, Rules 10b-5 and 10b-13 promulgated pursuant to the 1934 Act, New Mexico state securities law and the common law. Venue in a civil suit brought under the 1934 Act is determined in accordance with § 27 of that Act, 15 U.S.C. § 78aa. Such action may be brought in the district where any act or transaction which constitutes the alleged violation occurred or in any district where the defendant is found or transacts business. In addition, service may be had upon the defendant in any district where he is an inhabitant or may be found. Accordingly, venue as to Llennoco Corporation for claims brought under the 1934 Act will lie in New Mexico if the acts or transactions complained of took place in this district. If venue is properly laid in New Mexico, valid process may be had on Llennoco "in any other district of which the defendant is an inhabitant or wherever the defendant may be found" under the terms of 15 U.S.C. § 78aa.

Plaintiffs have alleged in their Complaint that defendant Bokum Resources Corporation sent by mail, and plaintiffs received in New Mexico, a Tender Offer, and Exchange Offer, and various offers to renew and extend the Tender Offer and Exchange Offer. It is also alleged that the Bokum Resources Corporation has its principal place of business in Santa Fe, New Mexico, and that "the acts and transactions complained of herein have taken place in this district." Such contacts with and activities within the forum are clearly adequate to establish venue for this action in the District of New Mexico.

Other courts have found venue to be established for purposes of the 1934 Act where there have occurred far fewer acts within the forum state than are alleged here. It has been held that there need only be one act within the district for purposes of the 1934 Act, so long as that act is more than an immaterial part of the alleged violation. Sohns v. Dahl, 392 F.Supp. 1208, 1215 (W.D.Va.1975) and cases cited therein; 3 A. Bromberg, Securities Law: Fraud, Sec. 11.3, p. 247 at n.11 (1974). These authorities suggest that the mere receipt by plaintiffs in New Mexico of the defendants' communications regarding the Tender and Exchange Offers is sufficient activity within

the district to satisfy the venue requirements of § 27, as this amounted to "an important step in the execution and consummation of the [alleged] fraudulent scheme." *Zorn v. Anderson,* 263 F.Supp. 745, 748 (S.D.N.Y.1966); see *Stern v. Gobeloff,* 332 F.Supp. 909, 911 (D.Md.1971); *Schneider v. Sears,* 265 F.Supp. 257, 262 & n.14 (S.D.N.Y.1967).

■ Llennoco states by affidavit of its president, Walter F. O'Connell, that it does no business in New Mexico, has no contacts with New Mexico and has not engaged in any activity in New Mexico. It is clear, however, that for purposes of venue for claims brought under the Act, it is not necessary that each defendant named have engaged in acts or transactions within the forum district.

"Venue under the Exchange Act is proper if one act in furtherance of the unlawful scheme is done in the forum district. This does not require that each defendant perform such an act; sufficient is an act of which all the defendants were the intended beneficiaries and a part of the fraudulent scheme. See *Clapp v. Stearns & Co.,* 229 F.Supp. 305 (S.D.N.Y.1964); *Dauphin Corp. v. Redwall Corp.,* 201 F.Supp. 466 (D.Dela.1962); *Hooper v. Mountain States Securities Corp.,* 282 F.2d 195 (5th Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961); *Wharton v. Roth,* 263 F.Supp. 922 (E.D.N.Y.1964)."

*Zorn v. Anderson,* supra, 263 F.Supp. at 748; see *Sohns v. Dahl,* 392 F.Supp. 1208, 1214–5 (W.D.Va.1975); *Fogel v. Wolfgang,* 48 F.R.D. 286, 289 (S.D.N.Y.1969).

■ Given the extraterritorial service of process provision in § 27, it is evident that so long as venue is properly laid in the forum district for claims brought under the 1934 Act, it is not necessary that each defendant have personally engaged in acts or transactions within the forum in order to sustain personal jurisdiction over him. In the case of *Mitchell v. Texas Gulf Sulphur Company,* 446 F.2d 90 (10th Cir. 1971), *cert. denied,* 404 U.S. 1004, 92 S.Ct. 564, 30 L.Ed.2d 558 (1971), an individual defendant raised objections to personal jurisdiction and venue similar to those raised by Llennoco Corporation in the present Motion, claiming that the court lacked personal jurisdiction over him because he had never been an inhabitant of the forum district, was not found there and transacted no business there. The Court of Appeals ruled that where the acts and transactions which formed the basis for claims brought under the 1934 Act had occurred within the forum district, the objecting defendant was properly before the court. 446 F.2d at 106. See also *Sohns v. Dahl,* supra, 392 F.Supp. at 1218 (since venue properly lay in the forum district under § 27 of the 1934 Act, court had in personam jurisdiction over defendant who was served out of state and who was not a resident, did no business in and had no contact with the forum district); *Stern v. Gobeloff,* 332 F.Supp. 909, 911–914 (D.Md. 1971) *(International Shoe* "minimum contacts" theory normally inapplicable where jurisdiction and venue based on and authorized by Securities Acts of 1933 and 1934; in personam jurisdiction of forum sustained where venue is satisfied and service is made in distant districts of which defendants are inhabitants or where they are found), but see *Oxford First Corp. v. PNC Liquidating Corp.,* 372 F.Supp. 191 (E.D.Pa.1974); *Clapp v. Stearns & Co.,* 229 F.Supp. 305, 307 (S.D. N.Y.1964) (Service of process in Kansas on Kansas corporate defendant gave New York court jurisdiction over such defendant where venue provision of 1934 Act was satisfied by a telephone call, which was part of the alleged violation of the Act, made in New York by a defendant other than the Kansas corporate defendant).

■ While the venue requirement of § 27 is satisfied and personal jurisdiction may properly be exercised over Llennoco Corporation with respect to claims brought under the 1934 Act[1] an issue remains whether personal jurisdiction over Llennoco

---

1. Llennoco Corporation was served with process in New York, where it maintains its corporate, principal and executive office. Llennoco has not objected to the manner of service of process.

Corporation also exists as to the pendent claims. There is a split in authorities on this issue, the older cases tending toward the view that service as to related claims under the nationwide service provisions of the Securities Exchange Act is not permitted. Courts taking this position have reasoned that Congress has not explicitly provided for such service and that implied extensions of statutes authorizing service of process are discouraged. See, e. g. *Trussel v. United Underwriters Ltd.*, 236 F.Supp. 801 (D.Colo.1964), and cases cited at *Bertozzi v. King Louie International, Inc.*, 420 F.Supp. 1166, 1171–2, n.1 (D.R.I.1976). More recent cases by contrast, appear to take the view that such service is permissible, reasoning that such approach is supported by the policy considerations which underlie the judicially created doctrine of pendent jurisdiction: judicial economy, convenience and fairness to litigants. See, e. g., *Robinson v. Penn Central Co.*, 484 F.2d 553 (3rd Cir. 1973); *Bertozzi v. King Louie International, Inc.*, supra at 1172, and cases cited at n.2 therein. See also 2 Moore, Federal Practice, ¶ 4.42[1] at 1293.11–12; 4 Wright & Miller, Federal Practice & Procedure: Civil § 1125 at 528–529. The latter cases and authorities are persuasive, and they appear to

> "state the better view, one which serves both the purposes of the substantive federal statutory scheme and the practical considerations of judicial economy underlying the concept of pendent jurisdiction without imposing any additional burden upon defendants who are already properly before the Court to confront the same factual issues under the federal law claims."

*Bertozzi*, supra at 1172.

Accordingly, Llennoco's Motion to dismiss the Complaint as against it for improper venue and lack of personal jurisdiction must be denied.

The second Motion to Dismiss, in which all defendants join, is based on Rule 12(b)(6), F.R.Civ.P. As to the first claim for relief, which alleges a violation of Rule 10b–13, promulgated to implement § 10(b),

defendants argue that no private cause of action based on this rule can be implied, and that in any case, the rule is not applicable here. Defendants further argue that those claims which allege violations of Rule 10b–5 and § 14(e) must be dismissed because plaintiffs have not made the requisite showing of scienter. Finally, defendants argue that pendent state and common law claims must be dismissed along with the federal claims.

Rule 10b–13, upon which plaintiffs' first claim for relief is based, was adopted by the S.E.C., effective November 10, 1969. The rule states in relevant part:

> § *240.10b–13 Prohibiting other purchases during tender offer or exchange offer*
> (a) No person who makes a cash tender offer or exchange offer for any equity security shall, directly or indirectly, purchase, or make any arrangement to purchase, any such security (or any other security which is immediately convertible into or exchangeable for such security), otherwise than pursuant to such tender offer or exchange offer, from the time such tender offer or exchange offer is publicly announced or otherwise made known by such person to holders of the security to be acquired until the expiration of the period, including any extensions thereof, during which securities tendered pursuant to such tender offer or exchange offer may by the terms of such offer be accepted or rejected . . . ..

Defendants assert that the Rule is not applicable here on the theory that Rule 10b–13 is merely a codification of Rule 10b–6, and is thus only intended to prohibit the practice under which in competing offers for corporate control, one offeror purchases the target company's securities on the open market in a manner designed to raise the price of the target company's securities above the level of the competing tender offer in an effort to defeat the offer. However, S.E.A. Release No. 8712 of October 8, 1969, which is the Commission's explanatory statement regarding its adoption of Rule 10b–13, indicates that the rule has wider application than merely to situations

involving competing offers for control.[2] Similarly, the language of the Rule and the S.E.A. Release do not support the notion that Rule 10b–13 is inapplicable to tender or exchange offers of shares of privately held corporations for which trading markets have not developed.

The more serious question is whether a private right of recovery can be implied from Rule 10b–13. Both sides point out, and draw different conclusions from the fact, that there have been no reported cases in which a private cause of action under Rule 10b–13 was either implied or denied.[3]

In determining whether to imply a private remedy from Rule 10b–13, the proper analysis is that set out in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and utilized recently in *Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). In *Cort v. Ash,* the issue to be resolved was whether a private civil remedy was to be implied from a criminal statute which prohibited corporations from making contributions in connection with a presidential election. The Court stated

"In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' . . .—that is, does the statute create a 'federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" (emphasis in original, citations omitted) 422 U.S. at 78, 95 S.Ct. at 2088.

▆ Application of the *Cort v. Ash* analysis in this case suggests that a private remedy under Rule 10b–13 should be implied. First, the S.E.C. adopted Rule 10b–13 expressly "for protection of investors," with "the objective of safeguarding the interests of the persons who have tendered their securities in response to a cash tender offer or exchange offer." S.E.A. Release No. 8712. Plaintiffs here are investors who tendered their securities in response to defendants' tender offer and exchange offer, and as such, are clearly "of the class for whose *especial* benefit the statute was enacted," 422 U.S. at 78, 95 S.Ct. at 2088 (emphasis in original).

▆ The second inquiry is whether there is any indication of implicit legislative or administrative intent to create a private cause of action under Rule 10b–13. While there is nothing in the language of § 10(b) or Rule 10b–13 that explicitly creates a private remedy,[4] the S.E.C. in drafting Rule

2. Defendants' reliance upon *Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977), in this context is misplaced, as that decision does not support the proposition that Rule 10b–13 is applicable only to competing tender offers. Additionally, *Piper* does not support defendants' claim to the effect that plaintiffs lack standing to assert a private cause of action under § 14(e) of the Securities Exchange Act, an argument raised for the first time in defendants' "Addendum to Memorandum in Support of Motion to Dismiss."

3. Of course, courts have implied a right of civil recovery from Rule 10b–5 and other securities regulations provisions. See 1 Bromberg, Securities Law: Fraud, Secs. 2.4(1)–2.4(2), pp. 27–39 (1975) & nn. 47–50.

4. There is nothing in the language of § 10(b) or Rule 10b–5 that explicitly creates a private remedy either, but that fact has not prevented courts from implying a private right of recovery under that rule. The seminal case from which the Rule 10b–5 private cause of action has sprung, *Kardon v. National Gypsum Co.,* 69 F.Supp. 512 (E.D.Pa.1946), relied, in the absence of explicit legislative intent to create a private right of recovery under that rule, on two theories: first, the common law tort rule, set out in § 286 of the Restatement of Torts, that a private right of action may be implied from a statute in favor of those whose interests the statute was designed to protect, 69 F.Supp. at 513–514, and second, the theory that a private remedy is almost necessarily implied from a statutory enactment voiding certain types of contracts if the enactment is to have any value

10b–13 certainly gave no indication that it did not intend to create a private right of recovery. As the Court stated in *Cort v. Ash,*

". . . in situations in which it is clear that federal law has granted a class of persons certain rights, it is not necessary to show an intention to *create* a private cause of action, although an explicit purpose to *deny* such cause of action would be controlling." (emphasis in original)

422 U.S. at 82, 95 S.Ct. at 2090. Given the fact that Rule 10b–13 gives persons who have tendered their securities in response to a cash tender offer or exchange offer the right to be assured that the offeror will not purchase or exchange the securities of other investors on different *terms from* those made in the tender offer or exchange offer, it is not necessary to demonstrate an explicit intention to create a private cause of action under Rule 10b–13.

Even so, implicit intent to allow a private cause of action under Rule 10b–13 may be found by drawing a parallel to *J. I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), in which the Court held that private parties have an implied right to bring suit for violation of § 14(a) of the Securities Exchange Act of 1934. The Court stated,

"While this language [of Section 14(a)] makes no specific reference to a private right of action, among its chief purposes is 'the protection of investors,' which certainly implies the availability of judicial relief where necessary to achieve that result." 377 U.S. at 432, 84 S.Ct. at 1559.

 The third factor in the *Cort v. Ash* analysis is whether such an implied remedy is consistent with the underlying purposes of the legislative scheme. The purpose of Rule 10b–13 and the Act itself would be furthered by allowing a private right of recovery in this situation. The threat of damages against a tender offeror

or exchange offeror who engages in manipulative or fraudulent practices will provide significant additional protection for investors. Just as "private enforcement of the proxy rules provides a necessary supplement to Commission action," *J. I. Case,* supra at 432, 84 S.Ct. at 1560, so, too, private enforcement of Rule 10b–13 would surely serve as an effective means of supplementing Commission action in enforcing the securities regulations. Such a private remedy would give to the class of persons intended to be benefitted by the rule an effective device enabling them to protect themselves against the evils the rule was designed to prevent. Any damages awarded would benefit those persons for whose protection the rule was adopted and whatever deterrent effect the threat of suit under Rule 10b–13 might have would work to the benefit of investors generally.

 Finally, in the face of comprehensive federal legislation and administrative action and the major role played by the S.E.C. in the regulation of securities practices, it cannot be concluded that this is an area "traditionally relegated to state law." Further, it is not at all apparent that resort to principles of state law would accomplish the purposes of Rule 10b–13 or fully protect the interests the rule was intended to protect. This case is unlike *Piper v. Chris-Craft Industries, Inc.,* supra, in which the Court concluded that it would be appropriate to relegate plaintiffs, who did not fall within the class of persons for whose benefit the legislation at issue there was enacted, to their remedies under state law, where the complaint apparently gave rise to a cause of action under common law principles of interference with a prospective commercial advantage.

Accordingly, it is concluded that the congressional purpose behind the Securities Exchange Act of 1934 would be effectuated by holding that a private remedy should be implied in favor of an investor who has

to a party to the contract, 69 F.Supp. at 514. These two theories, Bromberg notes, fn. 3 supra, are the bases upon which courts of every circuit have found some form of implied liability under the securities regulations. These theories are equally applicable to the question whether to imply a private right of recovery under Rule 10b–13.

suffered injury as a result of an offeror's violation of Rule 10b–13.

Defendants next argue that the second, third and fourth claims, which are based on alleged violations of Rule 10b–5, § 14(e), New Mexico securities law and common law fraud, must be dismissed under Rule 12(b)(6), F.R.Civ.P., in that they do not adequately allege facts showing scienter.

The complaint alleges in each of the second, third and fourth claims that "Defendants have intentionally violated" each of the sections and duties alleged to have been violated. It also alleges that defendants had knowledge of material inside information which they failed to disclose. The material inside information is alleged to include the true value of the company's shares and uranium concentrates, the company's anticipated profits from its dealings with the Long Island Lighting Company and others, its plans to issue a 99 to 1 stock dividend, and the fact that some persons were given the opportunity to participate in the exchange and tender offers on terms other than those stated in such offers. It is alleged that defendants intended to profit from their knowledge of such material inside information and that plaintiffs were injured as a result of defendants' acts and omissions.

■ The Supreme Court has stated the standard to be applied in determining the sufficiency of a complaint for purposes of Rule 12(b)(6):

> "[I]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Thus, in determining the sufficiency of the complaint, "[t]he question . . . is whether in the light most favorable to the plaintiff, and with every doubt resolved in his behalf, the complaint states any valid claim for relief." Wright & Miller, Federal Practice

and Procedure: Civil § 1357 at 601 (1969). Judged by this standard, the complaint sufficiently alleges scienter to withstand a 12(b)(6) motion to dismiss.

■ Defendants further argue that the exhibits attached to the complaint are somehow "in conflict" with the complaint because they do not on their face show facts amounting to an intent to deceive, and that in such case the exhibits "control." The argument is without merit. To accede to it would be, in essence, to try and dispose of the second, third and fourth claims on the basis of those exhibits alone, without benefit of other evidence or testimony. That is not the purpose of the 12(b)(6) motion.

Since it does not appear to a certainty that the plaintiffs' claims are without merit, and since the complaint does sufficiently allege that defendants acted with the requisite scienter, the motion under Rule 12(b)(6) to dismiss the second, third and fourth claims for relief will be denied.

■ Defendants correctly assert that punitive damages are not recoverable for actions arising under the Securities Exchange Act of 1934, making reference to § 28(a) of the Act, 15 U.S.C. § 78bb(a), and *deHaas v. Empire Petroleum Co.,* 435 F.2d 1223, 1229–1232 (10th Cir. 1970). Since § 28(a) was not intended to bar recovery of punitive damages in connection with claims based on common law fraud, however, and since plaintiffs have alleged violations of common law in their third and fourth claims, the motion to dismiss plaintiffs' fifth claim for relief which seeks punitive damages will be denied. See *Young v. Taylor,* 466 F.2d 1329, 1337–1338 (10th Cir. 1972).

Finally, as plaintiffs have alleged violations of federal securities laws, over which this court has jurisdiction, pendent jurisdiction will be exercised to hear the nonfederal claims alleged by plaintiffs which arise out of the same nucleus of operative facts upon which the federal claims are based.

An order will be entered in accordance herewith.