Johanna W. NELSON, Individually and as representative of a class; Stephen J. Bild, Jr., Esther de la Parra, Louis G. Hermann, and Mary L. Steinmetz, Individually, and as representatives of the intervenor noteholder class, Plaintiffs,

v.

QUIMBY ISLAND RECLAMATION DISTRICT FACILITIES CORPORATION et al., Defendants, and related cross-actions and third-party actions.

No. C–77–0784 SC.

United States District Court,
N. D. California.

Jan. 23, 1980.

R. Alan Stotsenburg, Stotsenburg & Donohue, P. C., New York City, Robert J. Heil, Ferguson, Hoffman, Henn, Mandel & Heil, Inc., San Francisco, Cal., Black & Deitrick, Walnut Creek, Cal., Toll & Leavitt, Los

Angeles, Cal., for plaintiff Johanna W. Nelson and the bondholder class.

Terrance L. Stinnett, Goldberg, Stinnett & MacDonald, San Francisco, Cal., James J. Farley, Scottsdale, Ariz., for intervenors-plaintiffs Bild, de la Parra, Hermann & Steinmetz.

Max H. Mortensen, John B. Schoenfeld, DDS, Robert D. Lewis, DDS and Lowell C. Lundell, DDS, in pro. per.

Theodore W. Phillips, Phillips, Cohn & Greenberg, San Francisco, Cal., for defendant Urban J. Schreiner.

Charles S. Kenady, Jr., E. Garth Black, Cooper, White & Cooper, San Francisco, Cal., for defendant Harold E. Rogers.

Bruce D. Wagner, Michael J. Brady, Ropers, Majeski, Kohn, Bentley & Wagner, Redwood City, Cal., for defendants Nichols, Rogers & Schreiner, P. C. and Rogers & Schreiner.

Richard B. Schreiber, Thomas G. Wood, Severson, Werson, Berke & Melchior, San Francisco, Cal., for defendant Union Bank.

Daniel A. Weber, Mitchell, Silberberg & Knupp, Los Angeles, Cal., for defendants Municicorp of California, Inc., Kenneth W. Rogers & Alan M. Stahl.

James Goldman, Kadison, Pfaelzer, Woodward, Quinn & Rossi, Los Angeles, Cal., for defendants Gibralco, Inc. & Charles L. Gunther.

Richard C. Brautigam, Philip R. Rotner, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendant Alan H. Nichols.

Jock Patton, Streich, Lang, Weeks & Cardon, Phoenix, Ariz., Bronson, Bronson & McKinnon, San Francisco, Cal., for third-party defendants Oxford Life Insurance Company and Theodore D. Wilkins.

Cambridge Insurance Services Corp. and Jack D. Milligan, in pro. per.

Peter Taft, Munger, Tolles & Rickerhauser, Los Angeles, Cal., for third-party defendants Marshall Cornblum, Raymond Bolton, Thiel, Bolton & Cornblum.

Ronald D. Packard, Packard & Packard, Palo Alto, Cal., for third-party defendants Packards & Prahm.

Richard Marx, Blumenfeld, Mars, Tureen & Paster, P. C., Clayton, Mo., Richard M. Kaplan, Kaplan, Levy, Samrick & Bernard, San Francisco, Cal., for third-party defendant Stix & Co.

John Charron, Charron & Whitaker, St. Louis, Mo., John Vasil, Petris Vasil & Bradley, Campbell, Cal., for third-party defendant Harry F. Mayfield.

Robert D. Carrow, Carrow, Forrest & Jordan, Novato, Cal., for third-party defendant Harvey Sullivan.

M. Laurence Popofsky, Charles N. Freiberg, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for third-party defendant Jeffrey Crews.

Charles A. Wood, Jr., Tinning & DeLap, Walnut Creek, Cal., for third-party defendant Martin V. Lyle.

Marvin Smith, Santa Rosa, Cal., in pro. per.

Robert Reeser, Oakland, Cal., for third-party defendants Aquatic Innovations, Inc., L. Mortensen and Chris Mortensen.

Patrick E. Catalano, James A. DuCharme, Law Offices of Patrick E. Catalano, San Francisco, Cal., Donald R. Wild, Wilson, Elser, Edelman & Dicker, San Francisco, Cal., for third-party defendants Frank Lee Crist, Jr., Crist, Crist, Griffiths, Bryant, Schulz and Biorn, P. C.

## ORDER

CONTI, District Judge.

This is a securities fraud class action brought by the purchasers of bonds and notes issued by the Quimby Island Reclamation District Facilities Corporation (hereinafter Facilities Corporation). This case is before the court on eleven separate motions, which will be examined in turn.

I. *DEFENDANT UNION BANK'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFFS.*

A. *SUMMARY JUDGMENT*

The parties and the court are well aware that before a summary judgment may be

**1368**

granted under F.R.Civ.P. 56, the pleadings, depositions, answers to interrogatories, admissions on file, and the accompanying affidavits must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ.P. 56(c); *MGM Grand Hotel, Inc. v. Imperial Glass Co.*, 533 F.2d 486, 488 (9th Cir.), *cert. denied*, 429 U.S. 887, 97 S.Ct. 239, 50 L.Ed.2d 168 (1976) (quoting *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 543 (9th Cir. 1975)).

The party moving for summary judgment has the burden of clearly establishing the lack of any triable issue of material fact. It is not the function of the trial court at the summary judgment hearing to resolve any genuine factual issue, including credibility; and for purposes of ruling on the motion, all factual inferences are to be taken against the moving party and in favor of the opposing party. Discretion plays no real role in the granting of summary judg-ment. *See* 6 *Moore's Federal Practice* ¶ 56.15[8], at 56–642–643.

## B. BACKGROUND

Defendant Union Bank is a party because it entered the bond indenture and thereby became a trustee on the express trusts created by the indenture.[1] As a trustee, it executed a certificate of authentication (hereinafter certificate) which stated:

This bond is one of the bonds issued pursuant to and under the provisions of the within mentioned Indenture.

Union Bank <u>as trustee</u>

By ———————

Authorized Officer

Under Section 204 of the bond indenture, a bond was invalid unless it was endorsed with the certificate issued by the trustee. Before a bond could be authenticated, however several papers had to be delivered to the trustee,[2] including:

1. A copy of the resolution adopted by the Board of Directors of the Facilities

---

1. Union Bank also agreed to act as indenture trustee for the note issuance while it was serving as trustee for the bonds.

2. Section 207 of the bond indenture provided: *Filing of Closing Documents and Delivery of Bonds.* Said Bonds, upon their execution in the form and manner set forth in Exhibits A, B, and C hereto, and as herein provided, shall be deposited with the Trustee for authentication, but before said Bonds shall be authenticated and delivered by the Trustee there shall be filed with or delivered to the Trustee the following:

 (a) A copy of the resolution adopted by the Board of Directors of the Corporation and certified by its Secretary authorizing the issuance of the Bonds and directing the authentication and delivery of such Bonds to or upon the order of the purchasers therein named upon payment of the purchase price therein set forth;

 (b) Bond counsel's opinion to the effect that:

 (i) This indenture has been duly and lawfully authorized, executed, and delivered by the Corporation, is in full force and effect, and is valid and binding upon the Corporation in accordance with its terms, and that such Bonds are valid, binding and direct obligations of the Corporation, in accordance with their terms and the terms of this Indenture, and such Bonds have been duly and validly authorized and issued in accordance with law and this Indenture; and

 (ii) the Bonds are not subject to any federal stamp tax in respect of either the issuance thereof or the subsequent transfer thereof or that any such tax on the issuance of said Bonds has been paid; and

 (iii) the Bonds, under the circumstnaces of the issuance and sale thereof, are not required to be registered under the Securities Act of 1933, as amended, and qualification of this Indenture under the Trust Indenture Act of 1939 is not required; and

 (iv) that any permit or permits of the Commissioner of Corporations of the State of California necessary under the California Corporate Securities Law to the sale and issuance of the Bonds has been obtained, and stating the basis of such opinion or opinions; and

 (c) The purchase price of the Bonds being paid on delivery.

 Such Bonds may be authenticated, delivered, and paid for in amounts of less than the total authorized principal amount, from time to time, as the Corporation may direct upon its written order to the Trustee.

 When the documents mentioned above shall have been filed with the Trustee and when said Bonds shall have been executed with authenticated [sic] as required by this Indenture, the Trustee shall be entitled to rely upon such resolution as to the names of the purchasers and the amounts of such purchase price.

Corporation,[3] certified by its Secretary, authorizing the issuance of the bonds and directing the authentication and delivery of such bonds to the named purchasers upon payment of the purchase price; and

2. Bond counsel's opinion to the effect that the indenture had been duly and lawfully authorized, executed, and delivered by the Facilities Corporation, that it was in full force and effect, and that it was valid and binding upon the Facilities Corporation in accordance with its terms, and that the bonds were valid, binding, and direct obligations of the Facilities Corporation, in accordance with their terms and the terms of the indenture, and that the bonds had been duly and validly authorized and issued in accordance with law and the indenture.

*Section 207.* The purchase price also had to be paid upon delivery. Finally, the bond indenture provided that the bonds could "be authenticated, delivered, and paid for in amounts of less than the total authorized principal amount, from time to time, as the [Facilities Corporation]" directed upon written order to the trustee. The agreement thus provided for multiple transactions.

Union Bank's liability as trustee under the indenture was limited. Section 902 provided, in pertinent part, that:

[t]he Trustee shall not have any responsibility in respect of the validity or sufficiency of this Indenture or the due execution or acknowledgment thereof by the Corporation, or in respect of the validity of any Bonds authenticated and delivered by the Trustee in accordance with the provisions of this Indenture, or of the coupons appertaining thereto. The recitals, statements and representations contained herein [the Indenture] and in the Bonds (*excluding the Trustee's certificate on the Bonds*) shall be taken and con-

strued as made by and on the part of the Corporation and not by the Trustee and the Trustee does not assume nor shall it be under any responsibility for the correctness of the same. (Emphasis added.)

The trustee was liable under Section 906, however, for its own negligent actions, or its negligent failure to act, as well as its own wilfull misconduct.

Plaintiffs' primary allegation is that the Union Bank, in its position as trustee, participated with other defendants in a fraudulent scheme or course of conduct to sell worthless bonds and notes to the investing public. In addition, plaintiffs maintain that Union Bank served as a statutory underwriter in the bond and note issuances. Finally, plaintiffs contend that Union Bank failed to comply with certain provisions of the trust indenture and thereby issued a certificate which was false. By conducting its operations in this way, defendant is alleged to have violated various state and federal securities laws. Those statutes which are relevant to this motion will be explicitly set forth in subsequent pages of this order.

## C. *UNION BANK'S MOTION*

Union Bank moves for summary judgment on the following grounds:

(1) Union Bank made no misrepresentations in the trustee's certificate which appeared on the bonds and notes;

(2) The fact that the bonds were "authenticated, delivered, and paid for" over a period of time, rather than in a single transaction, does not render Union Bank a "statutory underwriter" within the meaning of the Securities Act of 1933, § 2(11), 15 U.S.C. § 77b(11);

---

**3.** The bondholders contend, and will ask the jury to find, that the creation of the Facilities Corporation was itself a fraudulent device to evade the restrictions of the California Water Code on the issuance of bonds. In particular, a nonprofit corporation was formed to issue the bonds at an interest rate higher than the maximum permitted by the Water Code, 7 percent, while purportedly maintaining the

entitlement of any bonds issued by Facilities Corporation to tax-exempt status on the basis that they were issued "on behalf of" the District . . . ., as permitted by the Internal Revenue in *appropriate cases.* . . . Plaintiffs' Memorandum in Support of Cross Motion for Summary Judgment at 38, *Nelson v. Quimby Island,* No. C–77–0784–SC (N.D.Cal. 1979).

(3) Plaintiffs' miscellaneous allegations regarding the so-called "scheme" (a) attempt to impose duties upon Union Bank that it never assumed, (b) do not state a claim for securities fraud, and (c) attempt to re-inject into this litigation issues and claims that the court has previously eliminated from the case.

### 1. Certificate of Authentication

Plaintiffs' assertion that defendant Union Bank issued a false certificate is based on the following allegations:

(1) The Board of Directors of the Facilities Corporation never adopted a resolution authorizing the issuance of any bonds and directing the authentication and delivery of such bonds so that defendant trustee did not have a copy of any resolution when it issued the certificate;

(2) Union Bank failed to obtain the purchase price for the bonds;

(3) Union Bank never received a "written order" from the Facilities Corporation before entering into twenty-five partial bond closings;

(4) Union Bank did not deliver the bonds to purchasers named in the Facilities Corporation resolution; and

(5) Union Bank lacked a legal opinion of bond counsel when it authenticated the bonds.[4]

In light of the above, plaintiffs maintain that when defendant trustee signed the certificate saying that the bonds and notes were issued "pursuant to and under the provisions" of the indenture, it allegedly misrepresented the facts and thereby breached its fiduciary duties to the bondholder/noteholders and violated Securities Act of 1933, § 17(a), 15 U.S.C. § 77q(a),[5] Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b),[6] and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1979).[7] Plaintiffs' Memorandum in Support of Cross Motions for Summary Judgment at 12.

Defendant Union Bank vehemently disagrees with these allegations. It maintains that the certificate was true since the instruments were genuine and the certificate's only significance was to certify that the instruments were "not spurious, counterfeit, or false." *Ainsa v. Mercantile Trust*

**4.** See note 1 *supra.*

**5.** This section provides:

It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
(1) to employ any device, scheme, or artifice to defraud, or
(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of circumstance under which they were made, not misleading, or
(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

**6.** This is the basic antifraud section of the 1934 Act which prohibits the use or employment of any manipulative or deceptive devices in the purchase or sale of a security registered on a national securities exchange. 69 Am.Jur.2d *Securities Regulation—Federal* § 185 (1973).

**7.** Rule 10b–5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud;
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

The derivation of Rule 10b–5 is peculiar. Although the authority for the Rule comes from § 10(b) of the Securities Exchange Act of 1934, the draftsmen turned their backs on the language of that section and borrowed the words of § 17 of the Securities Act of 1933, simply broadening these to include frauds on the seller as well as on the buyer. *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 867 (2d Cir. 1968) (Friendly, J., concurring), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971).

*Co.,* 174 Cal. 504, 512, 163 P. 898 (1917). Union Bank asserts that, in any event, all of the procedures were properly followed so that there is no liability.

■ Aware of the strict standard which must be followed in summary judgment cases, the court does not believe that the record is adequate to resolve all material factual issues surrounding the issuance of the certificate, and thus it would be inappropriate to grant Union Bank's summary judgment motion on that point. There is insufficient evidence to determine whether or not Union Bank followed the necessary procedures before issuing the certificate.[8] Moreover, neither side has convinced the court of what significance the securities field attaches to a certificate such as the one present here. And in any event, the court believes that Union Bank's state of mind, that is scienter, is at least one issue to be tried by a jury.

*2. Union Bank as a Statutory Underwriter*

As noted earlier, plaintiffs contend that defendant Union Bank conducted itself in such a manner that it became an underwriter as defined in the Securities Act of 1933, § 2(11), 15 U.S.C. § 77b(11). Under that section, the term "underwriter"

> means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in the direct or indirect underwriting of any such undertaking . . . . .

The term "underwriter" is defined not with reference to the particular person's general business but on the basis of his relationship to a particular offering. No distinction is made between professional investment bankers and rank amateurs. Any person who performs one of the specified functions in relation to the offering is a statutory underwriter even though he is not a broker or a dealer. 1. L. Loss, *Securities Regulation* 547 (2d ed. 1961).

Plaintiffs cite deposition testimony of Union Bank's Executive Vice President, Janet Crawford, (Evidentiary Appendix, Exhibit F, at 391) to the effect that Union Bank distributed bonds without the required authority from the issuer, the Facilities Corporation. Moreover, it allegedly allowed bonds to be sold at discounts without obtaining prior permission. Plaintiffs conclude that Union Bank's "conduct was in this respect *no different from that of a broker-dealer acting as an underwriter who also customarily sets the price at which it will market securities which it has purchased from an issuer.*" As an underwriter, Union Bank allegedly failed to make at least some investigation of the facts underlying the securities issuance and is therefore liable to the purchasers who suffered harm. *See Sanders v. John Nuveen & Co.,* 524 F.2d 1064, 1071 (7th Cir. 1975), *vacated on other grounds,* 425 U.S. 929, 96 S.Ct. 1659, 48 L.Ed.2d 172 (1976); 554 F.2d 790 (7th Cir. 1977).

Defendant Union Bank counters with affidavits saying that it never sold bonds or notes to anyone, but in fact merely transferred them to those engaged in the underwriting and public distribution in return for payments credited to the account of the issuer.[9]

8. Although it appears that there might have been certain irregularities in the procedures followed prior to the certificate's issuance, the conflicting record does not permit the court to determine if these are "hypertechnical" or not. For example, it is not clear what authority Mr. Mortensen possessed as general manager of both the Facilities Corporation and the Quimby Island Reclamation District, and thus the court cannot make a finding as to whether or not Union Bank received proper "written orders" before entering into the partial closings. This

matter, as well as the other four, needs to be developed more fully at trial.

9. Union Bank asserts that it did not become a statutory underwriter simply because it issued instruments at several partial closings. Whether the bonds/notes were issued at one transaction or many is not the essential point, since the indenture appears to permit multiple transactions. The primary issue is thus whether Union Bank conducted itself within the definition of § 2(11), and that is a factual determination that the court cannot make based on a

**1372**

■ Whether one performs one of the specified functions of an underwriter is a question of fact to be determined at trial. The court, in accord with the strictures of Rule 56, chooses not to make any factual determinations based upon the limited record presented by the parties. For that reason, Union Bank's motion for summary judgment regarding the statutory underwriter issue is denied.

### 3. Union Bank's Participation in a Scheme

On February 7, 1974, Facilities Corporation passed a resolution appointing Union Bank as trustee on behalf of the bondholders. The District later approved of this appointment. As noted, plaintiffs intend to present evidence at trial that Union Bank was a knowing participant in a fraudulent scheme to sell worthless bonds and notes, or at least, it was an aider and abettor of such a plan.

The alleged scheme is outlined in plaintiffs' consolidated amended complaint. In sum, plaintiffs allege that Union Bank: (1) participated in the March 15, 1974 partial closing which violated federal and state securities laws; (2) knew of the illegal self-dealing in the purchase and sale of Quimby Island; (3) knew that bond counsel's opinion contained materially false representations; (4) knew that the Internal Revenue Service ruling that the bonds were tax exempt was obtained by deceit;[10] and (5) knew that false statements were printed on the face of the bonds.

Defendant counters by saying that plaintiff is attempting to impose duties upon defendant that the latter never assumed or that the indenture did not contain. Union Bank also asserts that plaintiffs are trying to reinject claims into the present lawsuit which have been dismissed to the state court.

In its order of February 3, 1978, this court stated:

> [B]efore someone can be caught within the net of aiding and abetting liability under Rule 10b–5, another party must have violated the securities laws, the alleged aider-abettor must be generally aware of his role in improper activity, and he must knowingly render substantial assistance.

*Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 97 (5th Cir. 1975).

The Ninth Circuit has elaborated on the aiding/abetting issue and found that:

> [a]n aider and abettor may be liable for damages even though his assistance of the scheme consists of mere silence or inaction . . . That liability arises, however, only when a duty to disclose has arisen . . . The duty to disclose may arise upon the possession of " 'inside information' " . . . or upon " 'knowing assistance of or participation in a fraudulent scheme' " . . . or upon a consent and approval of fraudulent practices by a director.

*Strong v. France*, 474 F.2d 747, 752 (9th Cir. 1973) (citations omitted).

■ As noted earlier,[11] Union Bank's liability as indenture trustee was limited. Whether Union Bank became a participant in the allegedly fraudulent scheme or assisted in its completion, and thereby assumed a greater duty and correspondingly greater liability, are questions not suitable for summary judgment. It is not clear if, or to what extent, Union Bank participated in the alleged illegalities surrounding the bond/note transactions, nor is it clear to what extent Union Bank knew about the

brief excerpt from a lengthy deposition and conflicting affidavits and exhibits. For example, before the court can determine that Union Bank did or did not deliver bonds without authority from the Facilities Corporation, the authority possessed by Mr. Mortensen must be ascertained. *See* note 8 *supra*. The mere fact that an indenture trustee performed its duties as enumerated in the indenture agreement does not convert it into an underwriter.

**10.** The court paid little attention to this claim since plaintiffs have failed to allege by what means defendant Union Bank obtained this knowledge.

**11.** *See* section (I)(B) *supra*.

alleged improprieties. These are factual determinations, and the length of the parties' moving papers and their frequent citation to deposition testimony and indenture provisions betray their assertions that there are undisputed facts upon which the court can make a legal conclusion. In accord with Rule 56, the court concludes that Union Bank's motion for summary judgment regarding its alleged participation in a fraudulent bond/note scheme is denied.[12]

Since Union Bank's motion for summary judgment is denied, the court chooses not to dismiss the state claims for lack of jurisdiction. *See United Mineworkers of America v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139–1140, 16 L.Ed.2d 218 (1966).

## II. *PLAINTIFF BONDHOLDERS' MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT UNION BANK.*

Plaintiffs' motion is practically the mirror image of Union Bank's motion. For the reasons enumerated in Section I, the court denies plaintiffs' motion for summary judgment.

## III. *PLAINTIFF NOTEHOLDERS' MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT UNION BANK.*

On July 14, 1974, Union Bank executed the Supplemental Indenture of Mortgage and Deed of Trust, and thereby became the indenture trustee for the Quimby Island Reclamation District Facilities Corporation Bond and Revenue Anticipation Notes (hereinafter notes) issuance. The notes were issued, authenticated, and delivered in two series, the first on July 16, 1974, and the second on July 25, 1974.

Plaintiff noteholders maintain that the notes were issued under emergency conditions: there remained less than $40,000 in the construction fund[13] for the completion of the Quimby Island project, and the underwriters could no longer sell their bonds because of the rising interest rate. *Plaintiff Noteholders' Memorandum in Support of the Motion for Summary Judgment* at 11–12, 26–27. In order to provide additional funds for the purposes for which the bonds were issued, the corporation decided to issue short term, negotiable notes. A principal amount of $950,000 in two series was issued ($475,000 each), and Union Bank is alleged to have manually signed 190 instruments containing the trustee's certificate of authentication.

The noteholders' claim for summary judgment is strikingly similar to that of the bondholders. In sum, they allege that: (1) Union Bank issued a false certificate of authentication and thereby violated Securities Act § 17(a), Securities Exchange Act § 10(b), and Rule 10b–5; (2) Union Bank participated or aided and abetted a fraudulent scheme; and (3) Union Bank was a statutory underwriter.

---

**12.** One point deserving brief mention is that the court does not agree with Union Bank's assertion that plaintiffs are attempting to reinject state law claims into the present lawsuit. In their consolidated amended complaint, plaintiffs allege that Union Bank, by participating in the fraudulent scheme and issuing a false certificate of authentication, violated § 17(a), § 10(b), and Rule 10b–5. That is, it is claimed, among other things, to have employed a scheme to defraud and to have made untrue statements of a material nature. The fact that Union Bank is also charged with violating California law by committing the above acts is inconsequential since one act may violate both federal and state law. Defendant Union Bank's reference to *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977) lacks merit since in that case there was a failure to allege a material misrepresentation or material failure to disclose, conditions required by Rule 10b–5. *Id.* at 474, 97 S.Ct. at 1301. There was likewise no finding that a violation of § 10(b) or Rule 10b–5 occurred. *Id.*

**13.** According to the developer's plan, the district was to acquire Quimby Island and improve it for recreational use by the general public. A public sewage collection, treatment, and disposal system was to be built; a public water production, treatment, and distribution system was to be added; a facility for the local generation of electricity was to be built; and public transportation easements for pedestrian and non-automotive traffic were to be constructed. *See* Declaration of Robert E. Fairfax in Support of Union Bank's Motion for Summary Judgment, Exhibit D.

The difference in the two moving papers lies in the grounds upon which the parties base their first allegation. The noteholders contend that Union Bank issued a false certificate of authentication because: (1) it did not have the authority to authenticate the notes since it did not have in its possession a resolution from the issuing corporation authorizing the issuance; and (2) a legal opinion was not filed or delivered to Union Bank. The trustee thereby allegedly violated § 207(b) of the bond indenture which had been incorporated by §§ 103 and 105 of the supplemental indenture.[14]

■ As with the two previous motions, the court believes that some material issues of fact have yet to be resolved, so that it would not be proper to grant plaintiff noteholders' motion for summary judgment pursuant to Rule 56. In regards to the certificate of authentication issue, neither side has convinced the court as to what significance is placed on a certificate such as the one present here.[15] Union Bank's scienter is also an issue to be resolved by the jury.[16]

And for the reasons specified in Sections (I)(C)(2) and (I)(C)(3) of this order, the court concludes that plaintiff noteholders' allegations concerning Union Bank's participation in the fraudulent scheme and its role as a statutory underwriter are not ripe for summary judgment. Accordingly, plaintiff noteholders' motion for summary judgment is denied.

## IV. DEFENDANT GIBRALCO, INC. AND GUNTHER'S MOTION TO DISMISS/FOR SUMMARY JUDGMENT AGAINST PLAINTIFFS.

On May 25, 1979, the court heard the motions of Gibralco, Inc. (hereinafter Gibralco) and Charles L. Gunther to dismiss/for summary judgment and to vacate the class certification order. In an order dated June 7, 1979, the court denied the latter motion and denied the former motion only with respect to the antifraud claims. With respect to the claim under Securities Act of 1933 § 12(2), *15 U.S.C.*

---

**14.** The court agrees with the noteholders that § 207 of the bond indenture was incorporated by §§ 103 and 105 of the supplemental indenture. Section 103 provided that the notes were to be "authenticated by the Trustee in substantially the same manner as required for the bonds pursuant to Section 204 of the Indenture."

Section 204 provided:

Only such of the Bonds as shall have endorsed thereon a certificate of authentication substantially in the form set forth in Exhibit C [sic] hereto, duly executed by the Trustee, shall be entitled to any rights, benefits, or security under this Indenture. No bonds, and no coupon appertaining to any Bond, shall be valid or obligatory for any purpose unless and until such certificate of authentication shall have been duly executed by the Trustee, and such certificate of the Trustee upon any such Bond shall be conclusive and the only evidence that such Bond has been duly authenticated and delivered under this Indenture.

Implicit in § 204 was compliance with § 207, which provided:

[B]efore said Bonds shall be authenticated and delivered by the Trustee there shall be filed with or delivered to the Trustee the following [*see* note 2 *supra* ]. . . .

Authentication by the Trustee was not an isolated act, but rather dependent upon the satisfaction of various conditions.

**15.** *See* Section (I)(C)(1) *supra.*

**16.** ·It is not clear whether there were irregularities in the procedures followed prior to the issuance of the note's certificate of authentication. As noted, plaintiffs maintain that no resolution of the issuer (Facilities Corporation), certified by its Secretary and directing the issuance and authentication of the notes, was ever executed and thus does not exist in Union Bank's files. Defendant Union Bank counters by directing the court's attention to Mr. Schreiber's Supplemental Declaration, Exhibit 13, which is an *unsigned* copy of the required resolutions, and Exhibit 12, which *is a copy of* the minutes of a meeting held July 9, 1974 during which time those directors present voted in favor of the resolution and supplemental indenture (a copy of which appears in Exhibit 13).

Plaintiffs also claim that the note opinion given by Urban Schreiner was not the same as the one that appeared on each of the notes. The court has examined both and concludes that the contents are the same, although the one on the notes was signed by Rogers & Schreiner, while the other was not signed.

Finally, it does not appear that the opinion appearing on the notes fulfilled the requirements of § 207 of the bond indenture, which the court has concluded was incorporated by the supplemental indenture.

*§ 77l(2)*, the court deferred judgment and requested that the parties submit additional briefs concerning: (1) whether any privity existed between defendants and named plaintiffs; and (2) whether the bond and note certificates, opinions of counsel, and the certificate of authentication constituted a prospectus. The matter is now before the court for consideration of the supplemental papers.

Gibralco is a municipal bond house which purchased $565,000 in bonds and $200,000 in notes from underwriters and resold them to the investing public. Gunther, president and majority stockholder of Gibralco, purchased the bonds and notes on Gibralco's behalf.

## A. CERTIFICATE AS A PROSPECTUS

In *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975), *reh. denied*, 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 114 (1975), Justice Powell wrote, "The starting point in every case involving construction of a statute is the language itself." Federal law defines a "prospectus" as "any prospectus, notice, circular, advertisement, letter, or communication, written or by radio or television, which [1] offers any security for sale or [2] confirms the sale of any security." *15 U.S.C. § 77b(10)*.

The term "offer for sale" includes "every attempt or offer to dispose of, or solicitation of any offer to buy a security or interest in a security, for value." *15 U.S.C. § 77b(3)*.

█ Civil liability may attach to the issuance of a false or misleading prospectus. Securities Act of 1933 § 12(2), *15 U.S.C.*

*§ 77l(2)* provides, in pertinent part, that any person who:

> offers or sells a security by the use of any means . . . in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading . . . shall be. liable to the person purchasing such security from him . . . ..

Plaintiffs maintain that the bond and note certificates, bond/note counsel's opinion, and Union Bank's certificate of authentication, taken either singly or collectively as one document, should be held to constitute a prospectus within the definition of that term as found in *15 U.S.C. § 77b(10)*.[17] Plaintiffs primarily rely on *Baron v. Commercial & Indus. Bank of Memphis*, [1979] Fed.Sec.L.Rep. (CCH) ¶ 96.826, at 95,307–308 (S.D.N.Y.1979) which found that a bond opinion printed on each bond certificate that was mailed to purchasers after the sale was completed, "constitute[d] a 'prospectus' within the meaning of § 12(2)."

█ The court cannot agree with the court's opinion in *Baron*, which cited no authority for its conclusion, and finds that the bond and note certificates, which contained the opinion of counsel and the trustee's certificate of authentication, do not constitute a prospectus under the 1933 Act. The court reaches the conclusion for two reasons.

### 1. Offer for Sale

First, the court has carefully examined the bond and note certificates in question

---

17. Plaintiffs assert a cause of action under § 12(2) in paragraphs 52–60 of the consolidated amended complaint. *Plaintiffs' Memorandum in Opposition to the Motion of MuniciCorp and Charles L. Gunther to Dismiss and for Summary Judgment* at 28. In paragraph 52, plaintiffs allege that defendants Schreiner and Nichols, Rogers & Schreiner (in the case of the bonds), and Schreiner and Rogers & Schreiner (in the case of the notes), as well as Union Bank as trustee in both issuances, made statements on every bond and note certificate which were materially false or misleading or omitted to state material facts necessary to make the statements not misleading. In paragraphs 53–58, plaintiffs elaborate as to the falsity and omissions of these statements. In paragraph 60, plaintiffs allege that all of the defendants knew, or should have known and ignored in reckless disregard of the truth the facts set forth in paragraphs 52–58. There is no allegation in the consolidated amended complaint of oral communications within the definition of § 12(2).

and cannot find anything in the documents which "offers any security for sale" within the meaning of *15 U.S.C. §§ 77b(3) & (10)*. The bond/note certificates themselves do not attempt to dispose of securities or solicit any offers to buy them. Instead, they embody an agreement between the Facilities Corporation and the purchaser, and set forth terms including the payment of interest, redeemability and maturity, transferrability, authenticity, and ownership.

Likewise, the certificate of authentication and the accompanying opinion letter do not fall within the definition of a prospectus. The opinion letter essentially outlines the documents examined, the research conducted, and the conclusions reached concerning the issuance of the bonds and notes. The certificate of authentication merely proclaims that the bonds/notes have been issued in accordance with the indenture. Neither the certificate of authentication nor the opinion letter attempt to dispose of securities or solicit any offers.

Furthermore, the mere fact that the three items appear on one document is inconsequential. Since each item taken individually is not a prospectus, and there is nothing remarkable about the organization of the instrument, it necessarily follows that lumping them together does not change their nature. Thus, the first prong of *15 U.S.C. § 77b(10)*—offer a security for sale—is not satisfied.

### 2. *Confirm the Sale*

Second, the court does not find that the three items examined previously "confirm the sale of any security" within the meaning of *15 U.S.C. § 77b(10)*. To understand the court's decision, one must conduct a brief review of the statute's legislative history.

The Securities Exchange Act of 1934 § 11(d)(2), *15 U.S.C. § 78k(d)(2)* provides, in pertinent part, that it is unlawful for a member of a national securities exchange, who is both a dealer and a broker, or for any person who both as a broker and a dealer transacts a business in securities through the medium of a member, to use a national securities exchange or interstate commerce to effect any transaction unless, if the transaction is with a customer, he discloses to such customer in writing, at or before the completion of the transaction, whether he is acting as a dealer for his own account, as a broker for such customer, or as a broker for some other person. The instrument for disclosure is called a "confirmation."[18]

The confirmation is a product of several federal provisions. Under Securities Exchange Act of 1934 § 15, *15 U.S.C. § 78o (c)(1)*, the Securities Exchange Commission (hereinafter the SEC) is granted the power to define, by rules and regulations, devices or contrivances which are manipulative, deceptive or otherwise fraudulent. The SEC, pursuant to that power, has enacted several rules, including Rule 15c1–4, *17 C.F.R. § 240.15c1–4 (1975)*,[19] which requires the giving or sending of "a written confirmation," at or before the completion of each over-the-counter transaction with a customer, disclosing whether the broker-dealer is acting as a dealer for his own account or as a broker for either or both sides. 3 L. Loss, *Securities Regulation* 1477 (2d ed. 1961).

The concept of a written confirmation made its first appearance in the Securities Exchange Act of 1934. Consequently, the Securities Act of 1933 did not contain the phrase "or confirms the sale of any security." These words were not added to the Securities Act until 1954 when Congress amended the statute to read as it does today. The reason for the additional phrase was "to avoid any implication of departure from settled interpretations that confirmations are prospectuses." [1954] *U.S.Code Cong. & Admin.News*, pp. 2973, 2994. It is therefore apparent that when Congress amended the Act, it merely intended to clarify that a broker/dealer's written confirmation constituted a prospectus.

---

**18.** *See* Rule 15c1–4 (17 C.F.R. § 240.15c1–4).

**19.** *See* note 18 *supra*. The heading of § 240.-15c1–4 is "Confirmation of Transactions."

After examining the bond/note certificates with their accompanying opinion letters and certificates of authentication, it is clear to the court that none of the items served as confirmations as defined above so that they did not "confirm the sale of any security" within the meaning of *15 U.S.C. § 77b(10)*. Thus, the second prong is not satisfied, and the three items, whether viewed individually or collectively, do not amount to a prospectus.[20]

## B. *PRIVITY*

Since the court has concluded that the bond/note certificates and their accompanying documents did not constitute a prospectus, and there has been no allegation of oral communication as envisioned in § 12(2), *15 U.S.C. § 77l(2)*, the court need not examine the privity arguments. Accordingly, Gibralco's and Gunther's motion to dismiss/for summary judgment is granted.

## V. *THIRD–PARTY DEFENDANT WILKINS' MOTION TO DISMISS AGAINST THIRD–PARTY PLAINTIFF UNION BANK.*

As noted earlier, Union Bank was the bond/note indenture trustee. On May 14, 1979, it filed an amended third-party complaint against a number of individuals, including Theodore E. Wilkins. Third-party defendant Wilkins is Executive Vice-President and Treasurer of Oxford Life Insurance Co., the entity which acquired, and then subsequently retired, the bond anticipation note issued by the Facilities Corporation. The complaint alleges, among other things, that Mr. Wilkins and others violated certain securities laws, and seeks indemnity, partial indemnity, and contribution from Mr. Wilkins. Mr. Wilkins responded to this complaint by filing the motion to dismiss which is now before the court.

## A. *MINIMUM CONTACTS*

Distilled to its essentials, defendant Wilkins' position is that since the "minimum contacts" doctrine of *International Shoe* applies to a federal securities fraud action in this circuit and since he was never in this state on business regarding the matters which are the subject of this litigation, then the third-party complaint should be dismissed because there is no *in personam* jurisdiction, irrespective of § 27 of the Securities Exchange Act.[21] The court does not agree.

The Supreme Court, in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) held that:

> due process requires only that in order to subject a defendant to judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

More recently, the Court in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) extensively discussed the restraints which due process imposes on jurisdictional power and concluded "that all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." *Id.* at 212, 97 S.Ct. at 2584.

Both *International Shoe* and *Shaffer* spoke directly of state court jurisdiction. One of the most complete and thorough examinations of the restrictions that due

---

**20.** In general, a prospectus relating to a security issued by other than a foreign government shall include the same information required to be included in a registration statement except for certain documents referred to in the schedules. A prospectus is subject to the SEC's power to adopt rules adding, subtracting, and classifying information. 15 U.S.C. § 77j(a)(1); 69 Am.Jur.2d Securities Regulation—Federal § 169 (1973); 1 L. Loss, *Securities Regulation* 317 (2d ed. 1961).

The information demanded in a registration statement (*see* Schedule A, 15 U.S.C. § 77aa), and therefore a prospectus, is more comprehensive than that which appeared in the bond/note certificates and their accompanying papers. This fact reinforces the court in its decision that the latter items were not to serve as a prospectus.

**21.** *See* note 22 *infra*.

process might impose on federal jurisdiction over persons is found in *Fitzsimmons v. Barton*, 589 F.2d 330 (7th Cir. 1979).

In *Fitzsimmons*, a securities fraud case, the district court relied on that part of *F.R.Civ.P. 4(e)* requiring that if no statute of the United States provides for the manner of service, then service is governed by the law of the state in which the district court sits, and therefore dismissed a party since the court concluded that the Illinois long-arm statute did not have sufficient reach. The Seventh Circuit reversed saying that reference to Illinois law was inappropriate in this case. Instead, the court based jurisdiction on the congressional authorization of nationwide service of process—Securities Exchange Act of 1934 § 27, *15 U.S.C. § 78aa*[22]—and found that this section satisfied Rule 4(e). Therefore, the only question before the court was "whether the Due Process Clause imposes any restraints on this nationwide service." *Id.* at 332.

After examining *Shaffer* and *International Shoe*, the court concluded:

It is clear, therefore, that the "fairness" standard imposed by *Shaffer* relates to the *fairness of the exercise of power by a particular sovereign*, not the fairness of imposing the burdens of litigating in a distant forum. Applying this standard of fairness, it is clear that this instance of personal service satisfies Due Process. Here the sovereign is the United States, and there can be no question but that the defendant, a resident citizen of the United States, has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States court.

*Id.* at 333 (emphasis added). In other words, when Congress authorizes nationwide service, as in § 27, the question becomes whether the party has sufficient contacts with the United States, not any particular state. *Accord, Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir. 1974) ("where . . . the defendants reside within the territorial boundaries of the United States, the 'minimal contacts' required to justify the federal government's exercise of power over them, are present"); *Warren v. Bokum Resources Corp.*, 433 F.Supp. 1360, 1364 (D.N.M.1977); *B & B Inv. Club v. Kleinert's Inc.*, 391 F.Supp. 720, 728 (E.D.Pa.1975) (in a federal securities fraud case, reliance on the due process requirements of *International Shoe* was misplaced because that decision involved extraterritorial service in a state court action under a state statute); *Sarratt v. Walker*, 405 F.Supp. 132, 133 (D.S.C.1975) (Congress' purpose in enacting § 27 was to extend personal jurisdiction to the full limits permitted by the due process clause); *Sohns v. Dahl*, 392 F.Supp. 1208, 1218 (W.D.Va.1975); *Kramer v. Scientific Control Corp.*, 365 F.Supp. 780, 787 (E.D.Pa. 1973) (Congress has the power to provide for the reach of service of process to the outer limits of the reach of its legislative power, which is anywhere in the United States or its territories); *S–G Securities, Inc. v. Fuqua Inv. Co.*, 466 F.Supp. 1114 [1979] Fed.Sec.L.Rep. (CCH) ¶ 96,750, at 94,-932 (D.Mass.1978) (the *International Shoe* standard is applicable only where a state court asserts jurisdiction over an out-of-state defendant pursuant to the state's long-arm statute). *See Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 2721, 61 L.Ed.2d 464 (1979) (White, J. dissenting). *But see In re Equity*

---

**22.** Securities Exchange Act of 1934 § 27, 15 U.S.C. § 78aa provides, in pertinent part:

The district courts of the United States, and the United States courts of any territory or other place subject to the jurisdiction of the United States shall have the exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereun-

der . . . Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

*Funding Corp. of Amer. Sec. Litigation*, 416 F.Supp. 161, 177–78 (C.D.Cal.1976).[23]

Applying the rule of *Fitzsimmons* to the case at bar, the court finds *in personam* jurisdiction since defendant Wilkins certainly had "minimum contacts" with the United States.[24] Jurisdiction in this case is founded on § 27 of the Securities Exchange Act and § 22 of the Securities Act, *15 U.S.C. § 77v*, which both permit service throughout the United States. The fact that Union Bank brings this action through a third party complaint is inconsequential. *See Lyons v. Marrud*, 46 F.R.D. 451, 455 (S.D.N.Y.1968).

### B. *CAPACITY OF WILKINS*

Defendant Wilkins also moves for dismissal on the theory that he is not subject to the personal jurisdiction of the forum since if he had any contact with the forum, it only occurred while he was acting in his official capacity as Vice-President and Treasurer of Oxford Life Insurance Co. He cites *Forsythe v. Overmyer*, 576 F.2d 779 (9th Cir. 1978), *cert. denied*, 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1979), in which the Ninth Circuit decided that "a corporate officer who has contact with the forum only with regard to his official duties is not subject to personal jurisdiction in that forum." *Id.* at ·783–84 (citing *Chem Lab Prod., Inc. v. Stepanek*, 554 F.2d 371 (9th Cir. 1977)). In *Kaltsas v. Giffen Indus., Inc.*, [1978] Fed.Sec.L.Rep. (CCH) ¶ 96,445, at 93,599 (S.D.N.Y.1978), the district court applied reasoning similar to *Forsythe* to a shareholder's diversity action and said: "Without some factual allegation of involvement in an individual capacity, the shareholders . . . failed to make a threshold showing of jurisdictional basis."

All three of the cases cited by defendant Wilkins were diversity actions. Neither side has adequately addressed the issue of what impact they would have on a federal securities fraud case which bases personal jurisdiction on § 27 of the Securities Exchange Act and § 22 of the Securities Act, two provisions that provide for nationwide service of process so that a party must merely have "minimum contacts" with the United States. The parties may brief this issue and submit their briefs within twenty-one days of this order. They are to arrange a briefing schedule among themselves.

Accordingly, defendant Wilkins' motion is denied subject to reconsideration after further briefing.

### VI. *THIRD–PARTY DEFENDANTS PACKARDS' AND PRAHM'S MOTION TO DISMISS THIRD–PARTY COMPLAINT OF DEFENDANT HAROLD E. ROGERS OR MOTION FOR A MORE DEFINITE STATEMENT.*

Third-party defendants Packards and Prahm (hereinafter the Packard group) were members of the investor group that owned Quimby Island and who participated in the allegedly fraudulent scheme to sell the property to the Reclamation District through the issuance of securities that are the subject of this lawsuit. Defendant and third-party plaintiff, Harold E. Rogers, Jr., was an officer of the professional law corporation, Nichols, Rogers & Schreiner, when another officer, Schreiner, issued an opinion on the Quimby Island bonds. He was also Schreiner's partner in Rogers & Schreiner when the latter issued a note opinion. In the consolidated amended complaint, defendant Rogers is alleged to have participated in the previously mentioned fraudulent scheme. More specifically, he is

---

**23.** The court placed little emphasis on this case because the district court in *Equity Funding* never really analyzed the question of whether the "minimum contacts" theory applied. It said: "This court finds the alleged partnership interest of these defendants in the Wolfson firm is sufficient to support jurisdiction over these defendants. This is true *even under* the 14th Amendment 'minimum contacts' analysis

of *International Shoe* . . ." (Emphasis added.) 416 F.Supp. at 177–78. The Ninth Circuit has yet to address the issue.

**24.** The court in *Mariash* believed that only in the case of extraterritorial service of process does the question of a forum's power to assert control over a defendant arise. 496 F.2d at 1143.

charged with violating Securities Act of 1933 §§ 17(a), *15 U.S.C. § 77q(a),*[25] 12(2), *15 U.S.C. § 77l(2),*[26] Securities Exchange Act of 1934 § 10(b), *15 U.S.C. § 78j(b),*[27] and Rule 10b–5, *17 C.F.R. 240.10b–5* (1979).[28] On July 19, 1979, Rogers brought a third-party complaint against the Packard group seeking contribution and indemnity. This matter is before the court on the Packard group's motion to dismiss, or in the alternative, motion for a more definite statement.

The Packard group asserts (1) that defendant Rogers fails to state a claim for indemnity since the equitable indemnity doctrine was adopted in California only so that a person may recover, under a negligence or strict liability theory, damages for injuries to his person and property; (2) that defendant Rogers fails to state a claim for contribution since the Packard group was not named as an original defendant and since an essential element of the underlying claim is that the third-party plaintiff intentionally harmed plaintiffs; and (3) that they have been prejudiced by defendant Rogers' delay in bringing the third-party complaint. The court will examine each assertion in order.

## A. *MOTION TO DISMISS*

1. *Indemnification*[29]

 a. *Federal Securities Laws*[30]

 i. *Section 10(b) and Rule 10b–5*

Section 10(b) of the Securities Exchange Act of 1934 confers rule-making power upon the SEC to condemn manipulative or deceptive practices in the sale or purchase of securities. Although it does not by its terms create an express civil remedy for its violation, and there is no indication that Congress, or the Commission when adopting Rule 10b–5, contemplated such a remedy,

the existence of a private cause of action for violations of the statute and the rule is now well established. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), *reh. denied,* 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 114 (1975); *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), *reh. denied,* 407 U.S. 916, 92 S.Ct. 2430, 32 L.Ed.2d 692 (1972); and *Superintendent of Ins. v. Bankers Life & Cas. Co.,* 404 U.S. 6, 13 n.9, 92 S.Ct. 165, 169 n.9, 30 L.Ed.2d 128 (1971).

In *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668, *reh. denied,* 425 U.S. 986, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976), the Supreme Court found that § 10(b) and its corresponding rule were addressed to practices that involve some element of "scienter," which was defined as a "mental state embracing intent to deceive, manipulate, or defraud." *Id.* at 193 n.12, 96 S.Ct. at 1381 n.12. The Court specifically reserved the question of whether reckless behavior was sufficient for civil liability under § 10(b) and Rule 10b–5, *id.,* but did conclude that the two provisions could not be read to impose liability for negligent conduct alone. *Id.* at 201, 96 S.Ct. at 1384.

After the *Ernst & Ernst* decision, many courts had to confront the question concerning reckless conduct. In *Nelson v. Serwold,* 576 F.2d 1332, 1337 (9th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978), the Ninth Circuit stated:

> *Ernst & Ernst,* we think, only went so far as to eliminate negligence as a basis for liability. We agree with those courts which have found that Congress intended the ambit of § 10(b) to reach a broad category of behavior, including knowing and reckless conduct.

---

**25.** *See* note 5, *supra,* for the contents of the section. See court's discussion of that provision in Section (VI)(A)(1)(a)ii.

**26.** *See* Section (IV)(A), *supra.*

**27.** *See* note 6, *supra.*

**28.** *See* note 7, *supra.*

**29.** The court expresses no opinion about the partial indemnity claims since they were never challenged by any party.

**30.** Indemnification for violation of the federal securities laws is a matter of federal, not state, law. *Odette v. Shearson, Hammill & Co.,* 394 F.Supp. 946, 954 n.9 (and cases cited therein.)

This conclusion has been reached in the second,[31] third,[32] fifth,[33] sixth,[34] and seventh circuits,[35] and several district courts.[36]

It is not necessary for the court to precisely define what constitutes reckless behavior since it is ultimately a factual determination which will vary from case to case. As a general matter, the court agrees with the standard articulated in *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1045 (7th Cir.), *cert. denied*, 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977), which stated that recklessness is highly unreasonable conduct representing an extreme departure from the standards of ordinary care. *Accord, Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1025 (6th Cir. 1979); *Sanders v. John Nuveen & Co.,* 554 F.2d 790, 793 (7th Cir. 1977) ("We believe 'reckless' in these circumstances comes closer to being a lesser form of intent than merely a greater degree of ordinary negligence.")

▇ Thus, if defendant Rogers is found liable for violating § 10(b) or Rule 10b–5, then the jury must find that he acted "intentionally" as defined in *Ernst & Ernst*, or "recklessly" as defined in *Sundstrand*. In either event, indemnification would be improper since the policy of the securities laws precludes indemnification in all except extraordinary circumstances, such as the indemnification of a corporation by its officers or directors who caused it to engage in the conduct giving rise to the liability. *In re Equity Funding Corp. of America,* 416 F.Supp. 132, 156 (C.D.Cal.1975); *Thomas v. Duralite Co.,* 386 F.Supp. 698 (D.N.J.1974), *aff'd in part*, 524 F.2d 577 (3d Cir. 1975). The weight of authority establishes that

indemnification against actual wrongdoing as contrasted with negligent conduct is considered void. *See Odette v. Shearson, Hammill & Co.,* 394 F.Supp. 946, 954 (S.D.N.Y. 1975); *Globus v. Law Research Serv. Inc.,* 287 F.Supp. 188 (S.D.N.Y.1968), *aff'd,* 418 F.2d 1276, 1288 (2d Cir. 1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); *Tucker v. Arthur Andersen & Co.,* [1973–74] Fed.Sec.L.Rep. (CCH) ¶ 94,544 (S.D.N.Y.1974). Therefore, defendant Rogers could not be indemnified if he is found liable under § 10(b) or Rule 10b–5.

### ii. *Section 17(a)*

There is disagreement over whether there is a private cause of action under § 17(a).[37] *Compare Daniel v. Teamsters,* 561 F.2d 1223, 1244–46 (7th Cir. 1977), *rev'd on other grounds,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979) (recognizing an action) *with Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152, 159 (8th Cir. 1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) (rejecting a § 17 cause of action). *See also* 3 L. Loss, *Securities Regulation* 1784–85 (2d ed. 1961). There appears, however, to be little practical point in denying the existence of an action under § 17 once it is established that an aggrieved person has a private cause of action under § 10(b) of the 1934 Act. *Globus v. Law Research Serv., Inc.,* 418 F.2d 1276, 1283–84 (2d Cir. 1969); *SEC v. Texas Gulf Sulphur,* 401 F.2d 833, 867 (2d Cir. 1968) (Friendly, J., concurring), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971); *Local 734 Trust v. Continental Ill. Nat'l*

---

**31.** *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 44 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

**32.** *Coleco Indus., Inc. v. Berman,* 567 F.2d 569, 574 (3rd Cir. 1977), *cert. denied,* 439 U.S. 830, 99 S.Ct. 106, 58 L.Ed.2d 124 (1978).

**33.** *First Va. Bankshares v. Benson,* 559 F.2d 1307, 1314 (5th Cir. 1977), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802.

**34.** *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1024 (6th Cir. 1979).

**35.** *Sundstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033, 1039–40 (7th Cir.), *cert. denied,* 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977).

**36.** *See, e. g., Sullivan v. Chase Inv. Serv. of Boston, Inc.,* 79 F.R.D. 246, 270 (N.D.Cal.1978); *In re Transocean Tender Offer Securities Litigation,* 455 F.Supp. 999, 1010–11 (N.D.Ill.1978).

**37.** The Supreme Court specifically reserved answering this question in *Daniel v. Teamsters,* 439 U.S. 551, 557 n.10, 99 S.Ct. 790, 795 n.10, 58 L.Ed.2d 808, 815 n.10 (1979).

*Bank & Trust Co.,* [1973–74] Fed.Sec.L.Rep. (CCH) ¶ 94,565, at 95,962–963 (N.D.Ill.1974).

Yet the court need not resolve this dispute [38] since, even assuming an action exists, the weight of authority holds that scienter must be present so that the cause of action cannot be premised on negligent conduct alone. *Sanders v. John Nuveen & Co.,* 554 F.2d at 796 (and cases cited therein); *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d at 867 (Friendly, J. concurring); *Malik v. Universal Resources Corp.,* 425 F.Supp. 350, 363 (S.D.Cal.1976).[39] To follow a lesser standard "would totally undermine the carefully framed limitations imposed on the buyer's right to recover granted by § 12(2) of the 1933 Act." *SEC v. Texas Gulf Sulphur,* 401 F.2d at 867–68 (Friendly, J. concurring). *See* 3 L. Loss, *Securities Regulation* 1785 (2d ed. 1961). Thus, if defendant Rogers is found liable under § 17(a), the jury will have to find that he acted more than negligently, and as noted earlier, indemnification is not permissible under such circumstances.

iii. *Section 12(2)*

■ Since the court has already examined this section at length when deciding Gibralco and Gunther's motion, it need not fully explore its dimensions again. What should be noted, however, is that one may violate this section even if he is merely negligent. *Franklin Sav. Bank of New York v. Levy,* 551 F.2d 521, 526–27 (2d Cir. 1977); *Rousseff v. Dean Witter & Co.,* 453 F.Supp. 774 (N.D.Ind.1978); *Odette v. Shearson, Hammill & Co.,* 394 F.Supp. at

956. In spite of this, there is disagreement over whether indemnification is proper if a party is found to have violated § 12(2). For example, the court in *Odette* denied indemnification to encourage the conduct required by § 12(2), while the court in *Globus* found that indemnification was permissible for conduct that was no more culpable than ordinary negligence.

The court sees no sense in adding to the confusion of the state of the law or of this case by deciding whether or not indemnification is proper in a § 12(2) case. This issue will not arise unless defendant Rogers is found liable for violating § 12(2) so it is a matter that can wait until the end of trial when the record is complete.[40]

b. *State Law*

The consolidated amended complaint also alleges that defendant Rogers violated *Cal. Corp.Code* (West) §§ 25401 and 25501, provisions which prohibit negligent misrepresentation. *Bowden v. Robinson,* 67 Cal. App.3d 705, 715, 136 Cal.Rptr. 871 (1977). Defendant Rogers seeks indemnity for these provisions and others.[41]

■ "Generally, indemnity becomes a consideration when one person is exposed to liability because of what another person did . . . [T]he determination of whether or not indemnity should be allowed must of necessity depend upon the facts of each case . . . The right to non-contractual implied indemnity rests upon *equitable* considerations. *Atchison, T. & S. F. Ry. Co. v. Lan Franco,* 267 Cal.App.2d 881, 886–87, 73 Cal.Rptr. 660, 663 (1968).

---

**38.** Neither side has briefed this point, and it is not necessary to resolve it for the purposes of this motion.

**39.** In *SEC v. Coven,* 581 F.2d 1020, 1026–27 (2d Cir. 1978), cert. denied, 440 U.S. 950, 99 S.Ct. 1432, 59 L.Ed.2d 640 (1979), the Second Circuit concluded that scienter was not required in an SEC injunctive action under subsection 17(a)(2). *Accord, SEC v. American Realty Trust,* 586 F.2d 1001, 1006 (4th Cir. 1978). The Fifth Circuit, in *Steadman v. SEC,* 603 F.2d 1126, 1132–33 (5th Cir. 1979) held that scienter need not be proved to establish violations of §§ 17(a)(2) and (3), but is an element of § 17(a)(1).

**40.** The court has decided in Section (IV)(A) that the bond/note certificate, the opinion letter, and the certificate of authentication do not, individually or collectively, constitute a prospectus. The matter may never present itself.

**41.** Cal.Corp.Code (West) § 25505 provides for indemnification in limited circumstances: "A corporation which is liable under this chapter shall have a right of indemnification against any of its principal executive officers, directors, and controlling persons whose willful violation of any provision of this law gave rise to such liability." Such is not the case here.

■ "[T]wo critical prerequisites are generally necessary for the invocation of non-contractual implied indemnity in California: (1) the damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the injured party; and (2) it must appear that the claimant *did not actively nor affirmatively participate* in the wrong." Id. at 887, 73 Cal.Rptr. at 664.

The court is not in a position at this time to determine on the basis of the meager record presented whether or not indemnification is proper. Since this issue will arise only if liability is found after trial, the court will resolve the matter at that time. To do so now would be premature.[42]

### 2. Contribution

#### a. Federal Securities Laws

As noted, the Packard group maintains that there is no right to contribution since it was not named as an original defendant and since an essential element of the underlying claim is that the third-party plaintiff intentionally harmed plaintiffs. The court does not agree.

■ Contribution is generally available in federal securities fraud cases.[43] *Odette v. Shearson, Hammill & Co.*, 394 F.Supp. at 957–58; *deHaas v. Empire Petroleum Co.*, 286 F.Supp. 809, 815–16 (D.Colo.1968), *mod. on other grounds*, 435 F.2d 1223 (10th Cir. 1970). And a claim for contribution may be asserted in a third party action pursuant to F.R.Civ.P. 14(a). *Odette v. Shearson, Hammill & Co.*, 394 F.Supp. at 958 (and cases cited therein). In fact, the deterrent policies of the securities laws that preclude indemnification prompt the conclusion that no party be allowed to

escape liability for any part of the damages. *See id.* Correspondingly, a party is permitted to receive contribution, even if found to have violated § 10(b), Rule 10b–5, § 17(a), and § 12(2). *Id. See Globus, Inc. v. Law Research Serv., Inc.*, 318 F.Supp. 955 (S.D.N.Y.1970), *aff'd*, 442 F.2d 1346 (2d Cir.), *cert. denied*, 404 U.S. 941, 92 S.Ct. 286, 30 L.Ed.2d 254 (1971); *deHaas v. Empire Petroleum Co.*, 286 F.Supp. at 815–16.

Accordingly, contribution is permitted under federal law.

#### b. State Law

■ As noted earlier, the consolidated amended complaint alleges that defendant Rogers violated Cal.Corp.Code (West) §§ 25401 and 25501. A statutory right to contribution is granted to those charged with violating these sections, Cal.Corp.Code (West) § 25505, 2 Ballantine & Sterling, *California Corporation Law* § 463.07, at 932.47 (1979), as long as the person requesting contribution was not a wilfull violator seeking contribution from a person who was negligent. Since the record is insufficient to determine the culpability, if any, of the defendants, the court finds that defendant Rogers may claim contribution at this stage. The Packard group's motion is denied as to this point.[44] *See* 1 Marsh & Volk, *Practice Under the California Securities Law* § 14.08[3], at 14–9 (rev. ed. 1979).

### 3. Prejudice

Third-party plaintiff Rogers filed his answer to the amended complaint on March 20, 1979, and moved for leave to file the third-party complaint on April 30, 1979. In its written order of June 7, 1979 (filed June 12, 1979), the court granted defendant Rogers leave to file the proposed third-party

---

**42.** The court should note that the cases cited here and those in the moving papers are not securities cases. The court is therefore not convinced that their principle permitting indemnification is applicable to the securities field. In any event, this issue may await resolution at a later time.

**43.** Like indemnification, contribution in a federal securities case is a matter of federal law. *Odette v. Shearson, Hammill & Co.*, 394

F.Supp. at 958; *Globus, Inc. v. Law Research Serv. Inc.*, 318 F.Supp. 955, 958, n.2 (S.D.N.Y. 1970). The Packard group's citation of California law, although thorough, is of no relevance to the alleged federal securities violations.

**44.** A motion to dismiss a complaint should not be granted if material issues of fact are unresolved. *Powell v. Southwestern Bell Tel. Co.*, 494 F.2d 485, 489 (5th Cir. 1974).

complaint because the court found that the complaint "will not prejudice the plaintiff by introducing an unrelated controversy or unduly complicating this litigation. Moreover, it will avoid circuity of actions, thereby promoting economies of time and expense." The Packard group objects to the filing of the third party complaint because it claims that the complaint was tardy and that they are now unduly prejudiced since the court permitted it. The Packard group was apparently served with notice of the motion, but did not oppose it. The court sees no reason to change its earlier decision.

In the first place, the court does not feel that the third-party complaint was untimely. The original complaint in this lawsuit was filed on April 15, 1977, by the representatives of the bondholders. On November 23, 1977, a complaint was filed by the representatives of the noteholders as plaintiffs in intervention. The complaints were somewhat imprecise, so in its order of June 9, 1978, the court ordered plaintiffs to submit a list of the various statutes which they claimed defendants violated together with a brief statement describing how each was violated. Shortly thereafter, the representatives of the two classes of securities investors combined their claims into one pleading—the consolidated amended complaint—which was filed on November 9, 1978.

Nichols, Rogers, and Schreiner and their corporation and partnership were initially represented in this action by the same law firm. During 1978, potential conflicts developed among the individuals, and between them and the corporation and partnership. The individuals were thus prompted to obtain separate counsel. Present counsel of record for Harold Rogers did not assume representation until January 19, 1979. As noted, Mr. Rogers' answer was filed on March 20, 1979, a reasonable time considering the complexity and sheer volume of this case.

On April 17, 1979, the deposition of Mr. Max Mortensen, the general manager of the Quimby Island Reclamation District and Facilities Corporation, commenced. Mr. Mortensen had been unavailable prior to that time because of a pending criminal prosecution against him before the SEC.

During Mr. Mortensen's deposition, certain facts were confirmed or revealed, facts upon which Mr. Rogers bases his third-party claims. Thirteen days after the deposition began, Mr. Rogers filed his third-party complaint.

■ The court is granted a broad discretion in determining whether to allow a third party complaint. 3 Moore's *Federal Practice* ¶ 14.05[2], at 14–198 (2d ed. 1979). In light of the above, the court concludes that the delay was understandable and excusable and that the trial will not be delayed or made unduly complicated. Any possible prejudice to the Packard group will be outweighed by the utility of having all aspects of this litigation decided in one proceeding. *See B & B Inv. Club v. Kleinert's, Inc.*, 391 F.Supp. at 725.

Secondly, the court is not persuaded by the Packard group's argument concerning the release of all claims granted to them by the Bankruptcy Trustee in the District's bankruptcy court proceedings. It appears that on February 10, 1978, the Packard group consented to the bankruptcy plan in exchange for the release of all claims held by the District against the Packard group. But the District release had no impact on the claims brought by third-party plaintiff Rogers. The release became effective June 6, 1978, and Rogers was neither a party to the bankruptcy proceedings nor notified that such a proceeding had been instituted. Therefore, the court does not see why the Packard group's release should have any bearing on Rogers' third-party complaint.

■ Accordingly, the Packard group's motion to dismiss is denied.

### B. *MOTION FOR A MORE DEFINITE STATEMENT*

■ If a party cannot reasonably be required to frame an answer because the complaint is too vague or ambiguous, he may move for a more definite statement before answering. F.R.Civ.P. 12(e). The pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. F.R.Civ.P. 8(a)(2). If the pleading meets the requirements of Rule 8 and fairly notifies the

opposing party of the nature of the claim, a motion for a more definite statement will not be granted. 2 A Moore's *Federal Practice* ¶ 12.18[1], at 2389 (2d ed. 1979). "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." F.R. Civ.P. 9(b).

After examining the third-party complaint, the court finds that in paragraph one of the third-party complaint, Mr. Rogers incorporates by reference the consolidated amended complaint filed by plaintiffs, which contains a detailed description of the alleged securities fraud scheme. In paragraph three, the Packard group is named as a third-party defendant, and its role in the alleged scheme is specified. Finally, in paragraph four, Mr. Rogers explains that he seeks indemnity/contribution from the Packard group because of its participation in the scheme already described. Considering that Rule 12(e) "is designed to strike at unintelligibility rather than want of detail," [45] the court is compelled to deny third-party defendant's motion for a more definite statement. The third-party complaint is not so vague or ambiguous as to make it unreasonable to require a proper answer. The various pre-trial devices for discovery can be utilized to fill in any possible gaps. See 2A Moore's *Federal Practice* ¶ 8.13, at 8–115 (2d ed. 1979).

Accordingly, the Packard group's motion for a more definite statement is denied.

VII. *THIRD–PARTY DEFENDANT STIX & CO.'S MOTION FOR SUMMARY JUDGMENT/TO DISMISS AGAINST UNION BANK OR A MOTION FOR A PROTECTIVE ORDER.*

Third-party defendant Stix & Co. (hereinafter Stix) is a broker-dealer who, through its manager, Harry Mayfield, is alleged to have been a member of the syndicate which underwrote the subject bonds.[46] As noted, Union Bank was the trustee of the express trusts created by the bond/note indenture and was the party executing the certificate of authentication.

On May 14, 1979, Union Bank filed an amended third-party complaint seeking indemnity and contribution from Stix. This matter is before the court on defendant Stix' motion for summary judgment/to dismiss, or in the alternative, motion for a protective order.

## A. *MOTION FOR SUMMARY JUDGMENT/TO DISMISS*

Stix' motion is based essentially on two arguments:[47] (1) Union Bank is not entitled to indemnity for any of the claims alleged against Stix in the third-party complaint; and (2) Union Bank is not entitled to contribution for any of the claims alleged.

### 1. *Indemnity*

Union Bank is alleged to have violated §§ 17(a) and 12(2) of the Securities Act of 1933, § 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5, as well as a variety of state claims. The issue of federal indemnity was examined in detail in Section (VI)(A)(1)(a) of this order, and the court's analysis need not be repeated here.

As for the state claims, defendant Union Bank is alleged to have violated, among others, Cal.Corp.Code (West) §§ 25401 and 25501, provisions which prohibit negligent misrepresentation. *Bowden v. Robinson*, 67 Cal.App.3d 705, 715, 136 Cal.Rptr. 871 (1977). Defendant Union Bank seeks indemnity for this provision and others. The issue of state law indemnity was examined

---

**45.** 2A Moore's Federal Practice ¶ 12.18[1], at 2389 (2d ed. 1979).

**46.** See section (I)(C)(2) for the discussion about underwriters.

**47.** Stix also claims that it did not sell any securities to the plaintiffs in this action so it did not owe a duty to them and therefore could not be held liable. Contrary to what Stix asserts, this matter was certified as a class action by order of this court on June 9, 1978.

in detail in Section (VI)(A)(1)(b) of this order, and the court's analysis need not be re-explored.

### 2. Contribution

In Section (VI)(A)(2)(a) & (b) of this Order, this court examined the issue of contribution in securities fraud cases, so it is not necessary to re-explore that area. One point raised here, however, that was not raised in the Packard group's motion is Stix' assertion that since Union Bank and Stix served different functions entailing different duties, then they cannot be liable in tort to the same person for the same harm.

In support of its contentions, Stix cites *Wassel v. Eglowsky*, 399 F.Supp. 1330, 1367 (D.Md.1975), *aff'd*, 542 F.2d 1235 (4th Cir. 1976), which said: "The necessary predicate for a contribution recovery is that the party it is recovered from be a 'joint tortfeasor', i. e., that he be liable in tort to the same person for the same harm."

The court finds *Wassel* inapposite and contribution proper in the circumstances presented here. The court in *Wassel* refused to permit contribution from Central Trust Bank, an establishment which had served as a stock transfer agent (*id.* at 1336–37) because the court could find no statute or case imposing liability on a transfer agent in the same position as Central Trust (*id.* at 1367). Also, plaintiff in *Wassel* was a person with whom Central Trust had never dealt or had contact. Finally, it neither knew nor had reason to know of any improprieties in the re-issuance of the subject shares. *Id.* at 1367 & 1368.

 The record presented to the court does not permit it to conclude that third-party defendant Stix is in the same position as Central Trust in *Wassel*. Stix, unlike Central Trust, completed transactions with members of the plaintiff class. Also, as a member of the underwriting syndicate, Stix may be held liable for violations of federal securities laws. Finally, both Union Bank and Stix are charged with being active and knowing participants in a securities fraud. The court does not express an opinion about Stix' culpability, but it must point out the differences between the situation in *Wassel* and the one present here. If both Union Bank and Stix are found liable as participants in the allegedly fraudulent scheme, then they will be "liable in tort to the same person for the same harm." Since the court is not in a position to say whether or not the parties are liable, third party defendant's motion for summary judgment/to dismiss is denied. F.R.Civ.P. 56(c); *Powell v. Southwestern Bell Tel. Co.*, 494 F.2d 485, 489 (5th Cir. 1974).

### B. MOTION FOR A PROTECTIVE ORDER

Stix also seeks a protective order providing that depositions taken prior to the occurrence of the later of (1) the certificate of the suit as a class action, or (2) the ruling on the motion of third-party defendant Stix for summary judgment will not be used against Stix, and further, that if Stix is not released as a party to the action, it shall have the right to re-depose any party which has already been deposed. Stix cites no authority for its motion and the court does not find its factual argument persuasive. Accordingly, Stix' motion for a protective order is denied.

### VIII. THIRD PARTY DEFENDANT STIX & CO'S MOTION FOR SUMMARY JUDGMENT/TO DISMISS AGAINST HAROLD E. ROGERS.

As in its motion against Union Bank, Stix maintains that third-party plaintiff Rogers is not entitled to indemnification or contribution for any of the claims alleged in the third-party complaint. Since these issues have been discussed in earlier portions of the order, the court need not review them again. Accordingly, this motion is denied.

### IX. THIRD–PARTY DEFENDANTS PACKARDS' AND PRAHM'S MOTION TO DISMISS THIRD–PARTY COMPLAINT OF DEFENDANT URBAN J. SCHREINER OR MOTION FOR A MORE DEFINITE STATEMENT.

As noted, the Packards and Prahm were owners of Quimby Island and allegedly par-

ticipated in the sale of Quimby Island to the Quimby Island Reclamation District. Defendant and third-party plaintiff Urban Schreiner was the attorney who issued the bond-note opinion letters. Mr. Schreiner filed his answer to plaintiffs' original complaint on June 30, 1977. He subsequently filed an answer to plaintiffs' consolidated amended complaint on February 16, 1979. Ten days later, defendant Schreiner filed a third-party complaint without leave of court.

## A. *MOTION TO DISMISS*

The Packard group moves to dismiss defendant Schreiner's action because it claims that: (1) contribution is not recoverable; (2) the third-party complaint was filed improperly according to F.R.Civ.P. 14, and (3) they will be unduly prejudiced if the complaint is permitted to stand.

The court has already addressed the contribution issue in Section (VI)(A)(2) of this order and found that contribution is permissible under both federal and state law. Accordingly, there is no merit to third-party defendants' first ground for denial of the third-party complaint.

Nor can the court accept the reasoning for the Packard group's second ground for their motion to dismiss. Under Rule 14, a third party may be brought into an action and the party impleading "need not obtain leave to make the service if he files the third-party complaint not later than 10 days after he serves his original answer." Whether Mr. Schreiner needed leave of court before filing his third-party complaint on February 26, 1979, depends on the interpretation of the phrase "original answer."

"An amended pleading that is complete in itself and makes no reference to nor adopts any portion of the prior pleading supersedes the latter." 3 Moore's *Federal Practice* ¶ 15.08[7], at 15–127 (2d ed. 1979). *Accord, Lubin v. Chicago Title & Trust Co.*, 260 F.2d 411, 413 (7th Cir. 1958). Under this interpretation, the second complaint becomes the original complaint. It necessarily follows that an answer to such a complaint is the original answer. The court finds that the term "original answer" refers to the first answer to the complaint that is in effect at that time, as opposed to an amended or supplemental answer to that complaint. This view not only comports with logic, but it is also in agreement with the policy objective of Rule 14(a) which is to give the defendant an incentive to implead the third party seasonably.[48] 3 Moore's *Federal Practice* ¶ 14.05[2], at 14–197 (2d ed. 1979).

Finally, the court is not persuaded by the Packard group's final argument concerning prejudice. The compromise reached by the bankrupt district and third-party defendants had nothing to do with Mr. Schreiner and had no impact on his rights to contribution. As before, the court believes that any possible prejudice will be outweighed by the utility of having all aspects of this litigation decided in one proceeding.

Accordingly, the Packard group's motion to dismiss is denied.

## B. *MOTION FOR A MORE DEFINITE STATEMENT*

In his third-party complaint filed on February 26, 1979, defendant Schreiner incorporates the consolidated amended complaint by reference. In paragraph three, he specifies the role the Packard group played in the alleged scheme. Upon examination, the court does not believe the third-party complaint is so vague and ambiguous that it would be unreasonable to require an answer.

---

**48.** The court is reinforced in its decision to deny third-party defendant's motion to dismiss on the basis of Rule 14 because of *Hensley v. United States*, 45 F.R.D. 352, 353 (D.Mont. 1968), in which the court stated "that leave of court must be obtained . . . not for protection of the third-party defendant, but for the protection of the parties to the principal action who have a legitimate concern in the orderly and timely disposition of their litigation. Since the timeliness of the procedure is of no concern to the third party when he is brought in, he may not challenge . . . the jurisdiction of the court." The ten-day limitation of Rule 14 is thus for the protection of the parties in the action and since none of them have complained, the court feels that impleader is proper.

■ Accordingly, the Packard group's motion for a more definite statement is denied.

## X. THIRD–PARTY DEFENDANTS PACKARDS' AND PHRAHM'S MOTION TO VACATE THE ORDER ALLOWING UNION BANK TO FILE A THIRD–PARTY COMPLAINT, OR MOTION TO DISMISS THE AMENDED THIRD–PARTY COMPLAINT, OR MOTION FOR A MORE DEFINITE STATEMENT AS TO COUNTS 18, 19, 20, and 25.

On April 20, 1979, this court issued an order granting Union Bank's motion to file a third-party complaint. Union Bank filed an amended third-party complaint on May 14, 1979. This matter is before the court on the Packard group's motion to vacate the earlier order permitting the third-party complaint, or to dismiss, or motion for a more definite statement.

### A. MOTION TO VACATE OR DISMISS

On April 20, 1979, the court held hearings before issuing its order granting leave to file the third-party complaint. The former counsel for the Packard group was present at the hearing, but said nothing in opposition to Union Bank's motion. After the motion was granted, he requested the court to direct Union Bank to provide him with free copies of the discovery that had thus far taken place in the action. He also agreed to accept service of the first complaint on the Packard group's behalf. As will be seen, the court finds no reason to reconsider its decision to permit Union Bank's third-party complaint and accordingly denies the Packard group's motion to vacate the earlier order.

The Packard group moves to dismiss the amended third-party complaint on several grounds: (1) Union Bank fails to state a claim for contribution; (2) Union Bank fails to state a claim for indemnity; (3) Union Bank fails to state a claim for constructive trust; and (4) the Packard group will be unduly prejudiced if the motion is granted.

### 1. Indemnity

This issue has been raised throughout these motions so that no further elaboration is necessary here.

### 2. Contribution

As with the indemnity issue, the court has examined this question in detail and concluded that contribution is proper. Accordingly, the Packard group's motion to dismiss as to the contribution claim is denied.

### 3. Constructive Trust

In count twenty-five of the amended third-party complaint, Union Bank requests:

4. That this court impress a constructive trust upon any monies re-received by Oxford Life Insurance Company and the Packards and Prahm for monies received directly or indirectly out of the proceeds of the sale of the securities which constitute the subject matter of plaintiffs' consolidated amended complaint.

The Packard group opposes Union Bank's claim for constructive trust for five reasons: (1) it is not appropriate under F.R. Civ.P. 14; (2) Union Bank comes to equity with "unclean hands"; (3) Union Bank lacks standing to assert a claim for constructive trust; (4) the District released the Packard group from all claims; and (5) Union Bank is not a real party in interest.

"A constructive trust is a remedy used by a court of equity to compel a person who has property to which he is not justly entitled to transfer it to the person entitled thereto. The trust is passive, the only duty being to convey the property." 7 Witkin, *Summary of California Law* § 131, at 5487 (8th ed. 1978.)

Neither side submits much legal authority for its respective position. On the surface, it appears that a constructive trust may be merely indemnity under another cover. In any event, a constructive trust is a remedy used by a court of equity, so the point need not be decided now. The matter

can be examined after trial when the record is more complete. The issue may never present itself.

### 4. *Prejudice*

The issue of prejudice has been raised by the Packard group previously and the court has examined it in sections (VI)(A)(3) and (IX)(A) of this order. After examining the moving papers, the court feels that defendant Union Bank has proceeded diligently and expeditiously in prosecuting its third-party action, and the court feels that any prejudice is outweighed by the utility of having all aspects of this litigation decided in one proceeding.

■ Accordingly, the Packard group's motion to dismiss is denied.

### B. *MOTION FOR A MORE DEFINITE STATEMENT*

■ The court has examined the amended third-party complaint filed by Union Bank and finds that in count one, paragraph three, Union Bank incorporates by reference the consolidated amended complaint. In count eighteen, Union Bank specifies the position of the Packard group in the alleged scheme and describes the acts for which it seeks contribution. A similar provision is incorporated in counts nineteen, twenty, and twenty-five, where Union Bank requests indemnity, partial indemnity, and the application of a constructive trust, respectively. The court believes that the third-party complaint is not so vague and ambiguous as to make it unreasonable to require a proper answer. Accordingly, the Packard group's motion for a more definite statement is denied.

### XI. *DEFENDANT MUNICICORP OF CALIFORNIA, KENNETH W. ROGERS, AND ALAN M. STAHL'S MOTION FOR LEAVE TO FILE A THIRD–PARTY COMPLAINT.*

In the consolidated amended complaint, plaintiffs maintain that MuniciCorp is a registered broker/dealer who served as an underwriter of both the bonds and notes. Defendant Rogers was president and largest shareholder of MuniciCorp while defendant Stahl was executive vice-president and a shareholder of MuniciCorp (the three will hereinafter be referred to as the MuniciCorp group.) They are alleged to have been involved in the fraudulent scheme which is the subject of this lawsuit.

On June 20, 1977, the MuniciCorp group answered plaintiffs' initial complaint. They answered plaintiffs' amended complaint on January 18, 1978. As noted, the amended consolidated complaint was filed in November of that year, and the MuniciCorp group filed its answer and the accompanying motion for leave to file the third-party complaint. In light of Section (IX)(A) of this order in which the court concluded that an answer to the consolidated amended complaint was an "original answer" within the meaning of Rule 13(a), the MuniciCorp group may file the third-party complaint without leave of court. Moreover, the court sees nothing dilatory in the MuniciCorp group's action and believes that any possible potential prejudice that might be suffered is outweighed by the utility of having all aspects of this litigation decided in one proceeding.[49]

Besides claiming that the MuniciCorp group unfairly delayed in bringing the third-party action, the Packard group maintains that the MuniciCorp group improperly requests the imposition of a constructive trust. The court has addressed this issue earlier and concluded that it should be taken up at a later time.

■ Accordingly, MuniciCorp's motion to file a third-party complaint is granted.

In accordance with the foregoing, it is hereby ordered as follows:

(1) Defendant Union Bank's Motion for Summary Judgment against Plaintiffs is denied;

---

49. The third-party complaint filed by the MuniciCorp group is substantially the same as those filed by defendants Union Bank, Harold E. Rogers, Jr., and Urban J. Schreiner. Two new parties, J. A. Sanford & Co., which was the principal underwriter of the bonds and W. Charles Jensen, its former head, are added.

(2) Plaintiff Bondholders' Motion for Summary Judgment against defendant Union Bank is denied;

(3) Plaintiff Noteholders' Motion for Summary Judgment against defendant Union Bank is denied;

(4) Defendant Gibralco, Inc. and Gunther's Motion to Dismiss/For Summary Judgment against Plaintiffs is granted as to Securities Act of 1933 § 12(2), 15 U.S.C. § 77*l*(2);

(5) Third-Party Defendant Wilkins' Motion to Dismiss against Third-Party Plaintiff Union Bank is denied, subject to reconsideration after further briefing;

(6) Third-Party Defendants Packards' and Prahm's Motion to Dismiss Third-Party Complaint of Defendant Harold E. Rogers or Motion for a More Definite Statement is denied;

(7) Third-Party Defendant Stix & Co's Motion for Summary Judgment/To Dismiss against Union Bank or a Motion for a Protective Order is denied;

(8) Third-Party Defendant Stix & Co's Motion for Summary Judgment/To Dismiss against Harold E. Rogers is denied;

(9) Third-Party Defendants Packards' and Prahm's Motion to Dismiss Third-Party Complaint of Defendant Urban J. Schreiner or Motion for a More Definite Statement is denied;

(10) Third-Party Defendants Packards' and Prahm's Motion to Vacate the Order Allowing Union Bank to File a Third-Party Complaint, or Motion to Dismiss the Amended Third-Party Complaint, or Motion for a More Definite Statement as to Counts 18, 19, 20, and 25, is denied;

(11) Defendant MuniciCorp of California, Kenneth W. Rogers, and Alan M. Stahl's Motion for Leave to File a Third-Party Complaint is granted.